UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN P. LOUGHMAN,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Civil Action No. 04-CV-12316-WGY |
| ) | |
| MAURA MAHONEY and  ) | |
| LOTUS DEVELOPMENT CORP.,  ) | |
| ) | |
| Defendants.  ) | |

DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed.R.Civ.P. 12(b)(6), defendants Maura Mahoney ("Mahoney") and Lotus

Development Corporation[1] ("LDC," together "Defendants") hereby move to dismiss plaintiff

Kevin Loughman's ("Loughman") complaint against them in its entirety.

Loughman's specious defamation and slander per se claims against LDC and Mahoney

rest on a single statement made over seven years ago:  Mahoney purportedly referred to

Loughman as a "lunatic" on July 10, 1998 during a telephone conversation with Maura Feeley

("Feeley"), a First Security Service Corporation ("FSSC") employee.  FSSC provided security

services at LDC's Cambridge facilities, and Loughman worked at the LDC facility as a security

guard.  However, Loughman cannot state a cause of action against LDC and/or Mahoney for

defamation or slander per se.  First, the applicable statute of limitations bars Loughman's

complaint, which he filed on November 1, 2004 – over six years after Mahoney's alleged

---

[1] The proper corporate defendant in this case is International Business Machines Corporation ("IBM"), the successor
in interest to Lotus Development Corporation.  For ease of reference, IBM and/or Lotus will be referred to
throughout as "LDC."  At all times relevant to the instant action, IBM owned LDC.

statement.  Second, as a matter of law, and common sense, Mahoney's statement, if she made it, does not constitute actionable defamation but rather non-factual hyperbole.  Finally, Mahoney's statement is protected by a business privilege because LDC contracted with FSSC to provide LDC's security force, and the statement was relevant to Loughman's fitness to perform security work.  For these reasons, the Court should dismiss all of Loughman's claims against LDC and Mahoney.

**FACTUAL BACKGROUND**[2]

A.    **General Background: Events Preceding Mahoney's Alleged Statement**

Plaintiff alleges that from June of 1994 until November 25, 1998, FSSC employed him as a security guard and assigned him to service the LDC Client Account.  (Complaint ¶10).  In August 1997, FSSC promoted Loughman to Weekend Morning Shift Supervisor servicing the LDC Account. (Complaint ¶12).  In that capacity, Loughman supervised six officers and provided security services to the four buildings that comprised LDC headquarters in Cambridge. (Complaint ¶12).

In early May 1998, Loughman increased his hours from 16 per week to 32, and agreed to work two weekday shifts, from 5:00 p.m. to 11:00 p.m. in addition to his weekend shifts. (Complaint ¶14).

In the spring of 1998, FSSC assigned Barbara Nicholas ("Nicholas") to the LDC Account.  Nicholas worked a Sunday shift, from 7:00 a.m. to 3:00 p.m. and reported to Loughman while she worked on that shift.  (Complaint ¶15).  Loughman further alleges that during Nicholas' tenure servicing the LDC Account, he issued her numerous verbal and/or written notices for poor performance, violation of FSSC and LDC policies and procedures; and for

---

[2] Defendants accept the allegations in the Loughman's complaint as true for purposes of this Motion To Dismiss only.

"observed incidents of discourtesy or unpleasantness." (Complaint ¶17).  Loughman alleges that on May 24, 1998, he issued "remedial orders" to Nicholas and other security officers in order to increase the thoroughness of building tours, and he directed the guards to visit all prescribed security check points.  (Complaint ¶18).

When he learned that Nicholas had not followed his orders, (Complaint ¶19) Loughman drafted a report regarding Nicholas' insubordination, and ordered her to read and sign the document.  (Complaint ¶20).  Nicholas refused to read and sign the document.  Instead, she confronted Loughman and later sent an e-mail message critical of him as a security guard and supervisor.  (Complaint ¶21).

Loughman alleges that he reported his concerns about Nicholas' attitude in writing to John Ashley, FSSC's Account Manager for LDC ("Ashley").  (Complaint ¶22).  He also claims that beginning on May 24, 1998, a hostile working environment developed, caused by Nicholas' alleged refusal to follow his orders and threats regarding his termination.  (Complaint ¶24).

Loughman alleges that on July 2, 1998, FSSC demoted him from his position of Weekend Morning Shift Supervisor, to a non-supervisory security officer.  FSSC then transferred him from the LDC account to other FSSC client accounts.  (Complaint ¶27).

Following these incidents, Loughman filed a workers' compensation claim with the Massachusetts Dept of Industrial Accidents ("DIA").  (Complaint ¶29).  The DIA denied his workers' compensation claim, and Loughman appealed this decision to the Massachusetts Appeals Court, which affirmed the decision on February 22, 2005.[3]  (Complaint ¶33).

---

[3] Kevin P. Loughman v. First Security Services Corp. & another, Massachusetts Appeals Court, Docket No. 2003-J-0123. (2005)

Plaintiff claims that on July 10, 1998, he called Mahoney, Security Services Manager for LDC.[4]  The alleged purpose of his call was to (i) notify LDC that certain personnel incidents had taken place on LDC property; (ii) ask Mahoney to request that defendant Feeley, an employee of FSSC, return his phone calls; and (iii) request that LDC preserve all documents, surveillance videotapes, and electronic files that might be related to the so-called "Barbara Nicholas Incidents," in anticipation of future litigation.  (Complaint ¶32).

### B.      The Only Allegation Against LDC and Mahoney

Loughman alleges that on December 24, 2001, during the discovery phase of his workers' compensation case, FSSC's attorney, Richard Mandel, sent Loughman an internal FSSC e-mail memo that Feeley had allegedly written on July 13, 1998.  The e-mail indicates that Feeley sent it to six other FSSC members of the management team.  Feeley's e-mail states that Mahoney had referred to Loughman as a "lunatic" during their telephone conversation on July 10, 1998.  (Complaint ¶34; *Exhibit A*).[5]  This is the only allegation in the complaint that pertains to LDC and Mahoney.

### ARGUMENT

Loughman's claims alleging defamation and slander against LDC and Mahoney fail for several reasons.  First, his claims are barred by the applicable statute of limitations.  Second,

---

[4] Mahoney denies ever having this conversation but does not contest Loughman's allegations solely for the purposes of this motion.

[5] Loughman's entire case against Defendants LDC and Mahoney rests on the July 13, 1998 memorandum, attached as *Exhibit A*.  Loughman failed to attach a copy of the July 13, 1998 e-mail memo to his complaint.  Nonetheless, defendants' submission of this document is consistent with the motion to dismiss standard because a defendant may introduce a document referenced in the pleadings where the document's authenticity, as here, is not disputed.  A document is not outside a complaint "*when ... a complainant's factual allegations are expressly linked--and admittedly dependent upon--a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)*." Edwin v. Blenwood Associates, Inc., 9 F.Supp.2d 70, 72 (D.Mass. 1998), quoting Beddal v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).

merely calling someone a "lunatic" does not constitute actionable defamation or slander, as a matter of law.  Third, defendants had a business privilege to comment on the plaintiff's state of mind to his employer, given his role in performing security services for LDC, and Loughman has not alleged that LDC or Mahoney recklessly published the alleged statement.  Accordingly, the Court should dismiss his complaint against the defendants in its entirety.

### STANDARD OF REVIEW

When deciding a motion to dismiss, the court must accept the complaint's allegations as true and make reasonable inferences in favor of the plaintiff.  Kiely v. Raytheon Co., 105 F.3d 734 (1ˢᵗ Cir. 1997); Hogan v. Eastern Enterprise/Boston Gas, 165 F. Supp. 2d 55 (D. Mass. 2001).  Dismissal is appropriate if the facts alleged, even if assumed to be true, do not justify recovery.  Aulson v. Blanchard, 83 F.3d 1 (1ˢᵗ Cir. 1996).   The Plaintiff cannot survive a motion to dismiss if he does not set forth factual allegations necessary to sustain recovery.  Gooley v. Mobil Oil Corp., 851 F.2d 513 (1ˢᵗ Cir. 1988).   Because this case is before the court on diversity jurisdiction, and all events took place in Massachusetts, Massachusetts law applies.  See Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994) ("[A] federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state.").

#### A.  The Statute of Limitations Bars Plaintiff's Claims.

The Massachusetts statute of limitations for defamation and slander is three years. M.G.L. c. 260, § 2A ("actions of tort … shall be commenced only within three years next after the cause of action accrues") and § 4 ("actions for … slander … shall be commenced only within three years next after the cause of action accrues").  Generally, in actions for defamation and slander, the cause of action accrues, and the statutory period begins to run, on the date of

publication. <u>Collins v. Nuzzo</u>, 244 F.3d 246 (1st Cir. 2001). Loughman admits in his complaint that the date of "publication" of the allegedly defamatory statement was July 13, 1998, over six years before he filed this action. Accordingly, the statute of limitations bars his claims. <u>See</u> <u>Santiago v. Lloyd</u>, 33 F. Supp. 2d 99 (D.P.R. 1998) (dismissing plaintiff's defamation claim as untimely); <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998) ("Granting a motion to dismiss based on a limitations defense is entirely appropriate when the pleader's allegations leave no doubt that an asserted claim is time-barred.").

Loughman attempts to save his stale claims by asking this court to apply the "discovery rule,"[6] which provides that "a cause of action for the redress of an 'inherently unknowable' wrong does not accrue until the harm becomes known, or in the exercise of reasonable diligence should have become known to the injured party." <u>Catrone v. Thoroughbred Racing Associations</u>, 929 F.2d 881 (1st Cir. 1991). Once a defendant establishes that the period of time between the plaintiff's injury and the filing of suit exceeds three years, the plaintiff bears the burden of proving that the discovery rule applies. <u>Lindsay v. Romano</u>, 427 Mass. 771, 773-74 (1998); <u>see also</u> <u>Doe v. Creighton</u>, 439 Mass. 281, 283-84 (2003) (analyzing discovery rule as applied to sex abuse cases).

---

[6] Although one Massachusetts court has applied the discovery rule to a libel claim, <u>Zereski v. Am. Postal Workers Union</u>, 1998 WL 1181769, *4 (Mass. Super. 1998) (statute of limitations on libel claim does not run until plaintiff could have seen publication), we know of no Massachusetts court that has applied the discovery rule to slander claims. Courts in several other states have held that the discovery rule is not applicable to slander claims, and that the statute of limitations begins to run at the time the statement is uttered, regardless of the plaintiff's knowledge of the utterance. <u>See, e.g.</u>, <u>JEM Marketing, LLC v. Cellular Telecomm. Indus. Trade Ass'n</u>, 308 N.J. Super. 160, 172 (N.J. Super. App. Div. 1998) (discovery rule not applicable to libel or slander claims); <u>Jones v. City of Folly Beach</u>, 326 S.C. 360, 368-69 (S.C. Ct. App. 1997) (discovery rule does not apply to libel or slander cases); <u>Quality Auto Parts, Inc. v. Bluff City Buick Co., Inc.</u>, 876 S.W.2d 818, 820-22 (Tenn. 1994) (discovery rule does not apply to slander claims); <u>McNell v. Hugel</u>, 1994 WL 264200, * 5-7 (D.N.H. 1994) (discovery rule not applicable to slander or libel claims); <u>Lyons v. Farmers Ins. Group of Cos.</u>, 67 Ohio App.3d 448, 450 (Ct. App. Ohio 1990) (discovery rule does not apply to slander claims).

6

Loughman's complaint asserts, in a conclusory manner, that he first "discovered" the alleged defamatory statement by Mahoney, from Maura Feeley's July 13, 1998 email in his personnel file over three and one half years later on December 24, 2001 after the statute of limitations for a defamation or slander claim expired and during discovery in connection with his workers' compensation claim.[7]  However, Loughman does not allege that a reasonably prudent person in his situation would not have discovered the statement earlier.  McGuiness v. Cotter, 412 Mass. 617, 628 (1992) ("In determining whether a party has sufficient notice of causation, our inquiry is whether, based on the information available to the plaintiff, a reasonably prudent person in the plaintiff's position could have discovered the cause of his or her injuries.").  Plaintiff bears the burden of proving the application of the discovery rule.  Franklin v. Albert, 381 Mass. 611 (1980).  In one relevant Massachusetts case applying the discovery rule, in the context of a defamation claim based on statements contained in the plaintiff's personnel file, the court held that the plaintiff reasonably should have inspected his personnel file for offending documents in light of his ongoing dispute with his employer regarding the contents of the file.  Hudgens v. Harvard Univ., 1998 WL 1184179, *2-3 (Mass. Super. 1998).  Here, plaintiff alleges that he anticipated litigation with FSSC as early as July 1998.  Indeed, in July 1998, Loughman alleges he asked Mahoney to preserve all documents, surveillance videotapes, and electronic files that might be related to the so-called "Barbara Nicholas Incidents," in anticipation of future litigation with FSSC.  (Complaint ¶32).  Loughman fails to explain why nearly three years after his alleged work-related injuries, and his initiation of litigation (in the form of filing the workers' compensation claim), he first requested and saw the July 13, 1998 memo.  Under these circumstances, Loughman's delay in seeking discovery from FSSC was not reasonable, as a

---

[7] Even after discovering the alleged defamatory statement in his personnel file in December 2001, Loughman waited nearly three more years before filing suit on November 1, 2004.

matter of law.  He cannot claim that the alleged wrong was "inherently unknowable" because he took no action to ascertain the facts which give rise to the instant claim.  Flynn v. Associated Press, 401 Mass. 776 (1988).  Accordingly, the discovery rule does not apply and Loughman's claims are time-barred.

### B.  The Alleged Statements Were Not Defamatory or Slanderous.

Plaintiff has alleged that Mahoney defamed and slandered him by calling him a "lunatic" to defendant Feeley.[8]  Massachusetts courts define defamation as an unprivileged communication (by words, pictures or other means) of false statements of fact concerning a plaintiff, by a defendant to a third person or group of persons, that tends to "expose the plaintiff to public hatred, ridicule or contempt, or tend[s] to hurt his standing with a considerable and respectable class in the community."  Draghetti v. Chmielewski, 416 Mass. 808, 811 (1994); McAvoy v. Shufrin, 401 Mass. 593, 597-598 (1988).  In order to be actionable, Mahoney's statement must be based on defamatory *facts* (as opposed to opinions), Lyons v. Globe Newspaper Co., 415 Mass. 258, 263 (1993), and she must have published the statements – that is, communicated them to – an individual other than the person allegedly defamed.  Brauer v. Globe Newspaper Co., 351 Mass. 53, 56 (1966); Restatement (Second) of Torts § 577.  Similarly, to prove slander, plaintiff must show that Mahoney published, by her words, a false and defamatory statement concerning the plaintiff.  Ellis v. Safety Ins. Co., 41 Mass. App. Ct. 630 (1996).

Here, even assuming for the purposes of this motion that Mahoney made the alleged statement, labeling someone a "lunatic" is not defamatory, as a matter of law.  Whether a statement is susceptible of conveying a defamatory meaning is a question of law for the court.

---

[8] Although Loughman also asserts a claim for libel, it appears from his complaint that this claim is addressed to defendants FSSC and Feeley.  To the extent that Loughman does intend to assert a libel claim against defendants, such a claim would fail because he has not alleged that Mahoney or LDC ever defamed him in writing.  Libel is the publication in writing of a false and defamatory statement of and concerning Loughman.

See Jones v. Taibbi, 400 Mass. 786, 792 (1987).  Courts must interpret statements alleged to be defamatory reasonably, and not subject them to strained interpretations of their meaning.  King v. Globe Newspaper Co., 400 Mass. 705, 711-12 (1987) (citing Lyons v. New Mass Media, Inc., 390 Mass. 51, 60 (1983)).  Accordingly, "[c]ourts have 'refused to hold defamatory on its face or defamatory at all an imputation of mental disorder which is made in an oblique or hyperbolic manner.'"  Bratt v. Int'l Business Machines Corp., 392 Mass. 508, 516 n. 13 (1984) (citing Hoesl v. United States, 451 F. Supp. 1170, 1172 (N.D. Cal. 1978)).  Similarly, courts have held that statements characterizing plaintiff as "paranoid" and "schizophrenic" are not capable of defamatory meaning.  Id.; see also Fram v. Yellow Cab Co. of Pittsburgh, 380 F. Supp. 1314 (W.D. Pa. 1974)); Mourad v. Boston Globe Newspaper Co., 60 Mass. App. Ct. 1106, 2003 WL 22902621, *2 (2003) ("…use of the word "paranoid" can only be considered hyperbole. '[T]o be actionable, a challenged statement must be understood as stating actual facts about an individual. That principle unquestionably excludes from defamation liability ... statements of rhetorical hyperbole.'") (quoting Lyons v. Globe Newspaper Co., 415 Mass. 258, 266-67 (1993)); see also Wetzel v. Gulf Oil Corp., 455 F.2d 857, 863 (9th Cir. 1972) (calling plaintiff a "nut" or "crazy" not libelous per se); Myers v. Boston Magazine Co., Inc., 380 Mass. 336, 341 (1980) (statement that plaintiff broadcaster was "enrolled in a course for remedial speaking" deemed non-actionable hyperbole).  Here, Loughman alleges only that Mahoney called him a lunatic.  Absent more, the alleged statement is not defamatory as a matter of law.

**C.  Defendants Had a Business Privilege to Comment on Plaintiff's Behavior, and Plaintiff Has Not Alleged "Reckless " Publication.**

Even assuming that the alleged statement was defamatory, the context in which Mahoney purportedly made the statement makes clear that Mahoney and LDC had a business privilege to comment on plaintiff's state of mind.  At the time, FSSC, plaintiff's employer, had a contractual

relationship with LDC to provide security services.  Mahoney, the Security Services Manager at LDC, had legitimate business reasons for communicating with FSSC personnel concerning those security services.  Massachusetts courts have recognized a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest.  White v. Blue Cross and Blue Shield of Mass., Inc., 442 Mass. 64, 69 (2004); Foley v. Polaroid Corp., 400 Mass. 82, 94-95 (1987); Bratt, 392 Mass. At 509, 512-13 (1984).  This privilege extends to communications between organizations "where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it."  Bratt, 392 Mass. at 513 n. 8; see also White, 442 Mass. at 69 (business privilege applies to communications between former and prospective employers concerning employee); Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. 550, 558 (2003) (a supervisor is conditionally privileged to publish defamatory information that "is reasonably related to the employer's legitimate business interest or the communication is of a kind reasonably calculated to protect or further a common interest."); Rathore v. Kelly, 2002 WL 31082045, *13 (Mass. Super. 2002) (business privilege applies to communications about employee providing services to company through contract between employer and recipient of services).  The business privilege defense applies to employers' communications necessary to determine "whether or not their employees are … psychologically capable of performing their duties."  Bratt, 392 Mass. at 517 (disclosures by employer of defamatory medical information concerning employee which is relevant to the employees' fitness to perform their work is privileged).  As in Rathore, Mahoney clearly had a legitimate business reason – ensuring appropriate staffing of LDC's security force by competent personnel – to comment upon

Loughman's fitness to provide security services in connection with the contract between FSSC and LDC.

Mahoney and LDC lose the privilege only if plaintiff can show that defendants (1) knew the information was false, (2) had no reason to believe it to be true, or (3) recklessly published the information unnecessarily, unreasonably, or excessively.  Sklar v. Beth Israel Deaconess Med. Ctr., 59 Mass. App. Ct. at 558.  Recklessness is the minimum level of misconduct that results in loss of a conditional privilege to publish defamatory information; merely negligent conduct does not destroy the privilege.  Foley v. Polaroid Corp., 400 Mass. 82, 95 (1987); Bratt, 392 Mass. at 514, 517 (in order to abrogate an employer's business privilege to publish defamatory information, plaintiff bears the burden of proving that "disclosure resulted from an expressly malicious motive, was recklessly disseminated, or involved a reckless disregard for the truth or falsity of the information.").  Loughman's complaint fails to allege that Mahoney (or LDC) "recklessly" disseminated the statement at issue, had a malicious motive for the disclosure or recklessly disregarded the truth or falsity of the statement.  Nor does the memo indicate that Mahoney recklessly disseminated the statement, since she only told Feeley.  Exhibit A. Accordingly, since Loughman has failed to plead (and cannot show) that defendants acted recklessly or with malice, he cannot overcome LDC and Mahoney's business privilege defense. As a result, this Court must dismiss his defamation and slander claims.

## CONCLUSION

For the reasons set forth above, plaintiff's defamation and slander allegations against LDC and Mahoney fail to state a claim upon which relief may be granted.  Therefore, the Court should dismiss plaintiff's claims against defendants in their entirety.


Respectfully submitted,
**ROBINSON & COLE** LLP

/s/ David B. Wilson
David B. Wilson (BBO #548359)

/s/ Sarah L. McGinnis
Sarah L. McGinnis  (BBO# 650804)
One Boston Place
Boston, MA 02108-4404
Tel 617-557-5900
Fax 617-557-5999

Dated:  September 7, 2005


## CERTIFICATE OF SERVICE

I hereby certify that I this day caused to be served a true copy of the foregoing pleading by mailing a copy of same, first class mail, postage prepaid, addressed to:


Kevin P. Loughman, *Pro Se*
4 Merrigan Street
Arlington, MA 02474

Signed under the penalties of perjury on September 7, 2005.


/s/ David B. Wilson
David B. Wilson