**4 Marrigan Street, Arlington, MA 02474**

September 14, 200[5]

Counselor David Bliss Wilson
Robinson & Cole, L. L. P.
One Boston Place
Boston, MA 02108-4404

      Re: Loughman v. Mahoney, et al.  U.S. District Court Case 1:04-cv-12316 WGY

Dear Counselor Wilson:

      Recently, two developments have taken place in connection with the above-captio[ned] case, and I thought I would take the time to inform you of these developments, as a matte[r o]f courtesy.

      First, a so-called "status conference" has been called for Tuesday, September 27th, 2[005], at 2:00 P.M., in Courtroom 18 at the U.S. Courthouse in Boston.  I look forward to seeing [yo]u there.

      In preparation for that conference, I call upon you to send me copies of the so-ca[lled] Waiver-of-Service Forms, for Maura Mahoney and for Lotus Development Corporation. [You] may recall that by telephone, we discussed the continuing non-return of Legal Process by M[s.] Mahoney and also by Lotus Development, back in January or February of this year. [My] impression from our telephone discussions was that my original process services had been [los]t, somewhere between the law firm of Seyfarth-Shaw and Robinson-Cole; but that you w[oul]d locate this process service, and waive return of process on behalf of Maura Mahoney and L[otu]s Development.

      To date, I have not received these waiver-of-service forms.  I believe that I need to re[tur]n them to the Court, so that the time-period for your response can then commence.  Would yo[u b]e kind enough to retrieve them from your files or those of Seyfarth-Shaw and forward them t[o m]y attention for return to the Court before September 27th?

      The second development is that I sustained a major injury in May, 2004, when I suffe[red] a fall, hit my head and face against a brick sidewalk in Cambridge, and suffered major lo[ss of] blood, owing to the anti-coagulants which I am required to take, owing to my heart v[alve] replacement. Because of the loss of blood, which was not replaced---my "pro-thrombin t[ime]" continued to be difficult to manage, with wide swings over a three-month period, causing ge[nera]l fatigue, some headaches, and inconvenient nose bleeds. I had to take several days off of w[ork,] and generated several thousand dollars of emergency-room bills at the Cambridge Hospit[al i]n mid-May. Fortunately, it was not necessary for me to be hospitalized, but I am sleeping bet[wee]n

Reference Copy for U.S. District Court

1

ten to twelve hours per day. I have been able to continue my work as a librarian at Harvar
which involves a minimum of physical exertion. As you may well appreciate, these hea
related events have had the untoward effect of distracting me from litigation administration ir
matters *of Loughman v. Mahoney et al.* in Federal Court and *Loughman v. Feeley, et. a*
closely related case, in Middlesex County Superior Court.

It looks like my medical condition is very slowly stabilizing and improving.
surgeons in London have predicted a recovery period of twelve-to eighteen months, from
date of my heart-valve replacement and coronary artery bypass surgery. We are
approaching the twelve-month range, since my initial surgery took place on December 10, 2
at the Heart Hospital in London. Both my GP and Cardiologist in Cambridge are pleased
my progress to date, but both caution against excess physical exertion and undue excitement.

Accordingly, I am taking a slow approach to litigation, lest my medical recovery sh
be compromised. As you know, it is my very firm belief that my cases are simple enough
straightforward enough to be handled on a pro-se basis. I am not a very big fan of litiga
inflation which inevitably seems to accompany the entry of lawyers into [almost any] litigatic

I am anxious, of course, to move ahead with the dual litigation against Maura Maho
Lotus Development and Maura-Feeley-First Security Services. It looks like a so-called "l
12/56" hearing will held on October 4th, in connection with the lawsuit against Maura Fe
and First Security in Middlesex County Superior Court. I will be requesting or motio
Federal Court for expedited trial and resolution of the issue of false, defamatory and recl
expressions of (sic) "fact" on the part of Maura Mahoney on July 10, 1998 in connection
her telephoned speech and her imputation of insanity or lunacy on my part at that time.

It continues to be my position that Maura Mahoney's telephoned speech to Maura Fe
on July 10, 1998 is not an expression of so-called "pure opinion" as erroneously claime
Counselor Jean Musiker; and that, as such, neither Maura Mahoney's original speech; nor M
Feeley's re-publication of that speech are afforded Constitutional protection as "free expres
of opinion".

We shall have to see how all of the substantive issues and so-called affirmative defe
play out in Court. As you probably know, the DIA Case, included multiple (suppressed) mo
for disclosure of my so-called "personnel file", which by law (MGL Chapter 149, §52C) w
include all documents pertaining to the subject of "employee discipline" in the possession o
employer, also including the Maura Feeley's ignominious memo of July 13, 1998.
understand that this document was withheld and suppressed for over three years by First Sec
Services, notwithstanding its obligations for full disclosure of "personnel file" under statute.

You might also want to review *Harding v. Walmart Stores* for some addit
perspectives on this particular issue of personnel file disclosure. The full case record in the
case is close to 5,000 pages, about 4,000 pages of which are single-spaced letters, me
motions, and legal memoranda, addressed to the DIA, including the presiding Judge. I have
than 100 pages, addressed to the Presiding DIA Judge on the issue of perceived obstructic
discovery by First Security Services Corporation. Numerous case-related documents, in add
to the non-disclosed memo of July 13, 1998, have "disappeared" under the very watchful ey
The Pinkerton Agency (previous owners of First Security)---a firm which has been in th
called security and protection business for about 150 years----yes, THAT very Pinkerton's

folks who lynched the Mollie Maguires from the Pennsylvania Coal Mines---was it in 1850's?

I look forward to seeing you on September 27, 2005, and to your anticipated Assist[ance] in returning Waiver-of-Service Forms, so that this procedural issue can be resolved at or be[fore] the time of our status Conference.

Note, since starting this letter, I have just opened some mail from your office, having returned from a week-long trip to Ireland. I departed for Ireland on September 7, and have [only] returned today. The envelope contains your Motion for Dismissal, as far as I am abl[e to] determine. I shall respond to it by means of an Opposition or Objection, within seven days [from] today, in keeping with my understanding of Court Rules.

We will still need to bring to the attention of the Presiding Judge, the boycott, disappearance, and non-response to my Legal Service, which appears to be practiced both by Defendants and by their various and oft-changing legal counsel.

Very sincerely yours,

*[signature]*

Kevin P. Loughman

Copy to: Bonnie Smith, Clerk, U.S. District Court for Eastern Massachusetts
        Attorney Jean Musiker, Counsel for Maura Feeley and First Security