

FILED
IN CLERKS OFFICE

UNITED STATES DISTRICT COURT
DISTRICT OF [EASTERN] MASSACHUSETTS

2005 SEP 27  A 9: 29

CIVIL ACTION NNUMBER:  04-CV-12316-WGY

U.S. DISTRICT COURT
DISTRICT OF MASS.

---

KEVIN P. LOUGHMAN,
A Citizen of the Commonwealth of Massachusetts,
Plaintiff

vs.

MAURA MAHONEY,
Now Believed to Be a Citizen of the State of Florida
In Her Former Capacity as Security Services Manager,
Lotus Development Corporation

and

LOTUS DEVELOPMENT CORPORATION,
Based in Cambridge, Massachusetts,
Formerly a Wholly-Owned Subsidiary of
INTERNATIONAL BUSINESS MACHINES CORPORATION, (IBM),
Believed to Be Based and Incorporated, in the State of New York,

Defendants

---

PLAINTIFF'S APPENDIX "A" 23 A.L.R. 3d 652
LIBEL AND SLANDER: ACTIONABILITY OF IMPUTING TO
PRIVATE PERSON MENTAL DISORDER OR INCAPACITY, OR
IMPAIRMENT OF MENTAL FACILITIES

---

By and For the Plaintiff, Pro-Se

Kevin P. Loughman

4 Marrigan Street, Arlington, Massachusetts, 02474

Telephone: 781-641-2756

**FOR EDUCATIONAL USE ONLY**
23 A.L.R.3d 652

American Law Reports
ALR3d
Copyright © 1969-2004 The Lawyers Co-operative Publishing Company; Bancroft-Whitney Company

Annotation

LIBEL AND SLANDER: ACTIONABILITY OF IMPUTING TO PRIVATE PERSON MENTAL DISORDER OR INCAPACITY, OR IMPAIRMENT F MENTAL FACULTIES

INDEX

Alcohol and drugs, statement as to excessive use of § 5[a]
"Antisocial" as oral imputation § 6[b]
Attorney, effect of imputation of insanity to § 6[b]
"Blockhead or fool" as libelous imputation § 7[a]
Brains, libel from imputation that plaintiff was without § 7[a]
"Brainstorms," libel from statement that plaintiff was subject to § 7[a]
Business of plaintiff, imputation of insanity or mental deficiency as reflecting on § § 6, 7[a]
Comment § 2
"Crazy" as imputation of insanity § § 5, 6
"Daft," libel from imputation of being § 7[a]
"Dangerous man" as libelous imputation § 7[a]
"Decided complex," as libelous imputation § 7[a]
"Drunk and crazy" as oral imputation of insanity § 6[a]
"Eccentricities that can be accounted for on no other hypothesis than insanity," actionability of written imputation of § 5[a]
Fool, libel from imputation that plaintiff was § 7[a]
"Furious with madness" as libelous imputation § 7[a]
"Ghoul" as libelous imputation § 7[a]
Graduate student, effect of oral imputation of insanity to § 6[b]
"Hereditary predisposition to insanity," actionability of statement as to § 5[a]
"Immature impoverished mind" as libelous imputation § 7[b]
"Incapable of thinking," libel from imputation that plaintiff was § 7[a]
Inhuman actions, libel from attributing to plaintiff § 7[a]
"Insane fanatic" as written imputation of insanity § 5[a]
"Insane political prosecution," publication imputing to certain persons acts of § 5[a]
Insanity, actionability of imputing § § 5, 6
"Intellectually incompetent" as oral imputation of insanity § 6[b]
"Jackass in guise of doctor" as libelous imputation § 7[a]
Kleptomaniac tendencies, libel from allegations as to § 7[a]
"Knocker," libel from attributing to plaintiff characteristic of being § 5[a]
Lunatic asylum, effect of calling plaintiff fit person to be sent to § 5[a]
"Mania for destruction" as written imputation of insanity § 5[a]
"Manic depressive with a psychopathic personality" as written imputation of insanity § 5[a]
"Mental case" as oral imputation of insanity § 6[a]
Mental deficiency not amounting to insanity, imputations as to § § 7, 8
"Mental derangement" as written imputation of insanity § 5[a]
"Mentally retarded," libel from allegations that plaintiff was § 7[a]
Minister, written imputation of mental deficiency to § 7[a]
Nurse, effect of oral imputation of mental deficiency to § 8
Occupation of plaintiff, imputation of insanity or mental deficiency as reflecting on § § 6, 7[a]
Oral imputations--
generally § 4
insanity § 6
mental deficiency not amounting to insanity § 8
"Paranoiac" as written imputation of insanity § 5[a]
"Paresis" as written imputation of insanity § 5[b]
"Patient in mental institution" as written imputation of insanity § 5[a]
Physician--
effect of statement of insanity by § 5[a]
imputation of mental deficiency to § § 6[a], 7[a]
Political candidate, effect of imputation of mental deficiency to § 7[b]
"Poor, insane lunatic" as written imputation of insanity § 5[a]
Practice pointers § 2[b]
Preliminary matters § 1
Priest, effect of oral imputation of insanity to § 6[a]
Printed imputations. Written imputations, infra
"Psychopath" as oral imputation of insanity § 6[b]
"Recommitment to insane asylum" as written imputation of insanity § 5[b]
Related matters § 1[b]
Scope of annotation § 1[a]
"Shallow head and unprincipled heart" as libelous imputation § 7[a]
"Silly stupid senile bum, a troublemaker," as imputation of mental deficiency § 8
Special damages, actionability without § § 3, 4

"Suicidal mania" as written imputation of insanity § 5[a]
Summary § 2
Teacher, oral imputation of insanity to § 6[a]
Tobacco and alcohol, libel from imputation of ruination by § 7[a]
"Unbalanced mentality," actionability of §§ 4, 5[a]
"Unsound mind" as written imputation of insanity § 5[a]
"Unstable mind," actionability of § 3
"Wretched idiot," libel from calling plaintiff § 7[a]
Written imputations--
generally § 3
insanity § 5
mental deficiency not amounting to insanity § 7

## TABLE OF JURISDICTIONS REPRESENTED

### UNITED STATES

Battell v Wallace (1887, CC NY) 30 F 229--§ 7[a]
Boice v Bradley (1950, DC Idaho) 92 F Supp 750--§ 6[a]
Kuhn v Philip Morris U.S.A., Inc. (1993, ED Pa) 814 F Supp 450--§ 8
Leidholdt v L.F.P., Inc. (1988, CA9 Cal) 860 F2d 890, 15 Media L R 2201--§ 5[b]
Marten v. Yellow Freight System, Inc., 993 F. Supp. 822--§ 8
Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR 2d--§ 3
Mills v. Wex-Tex Industries, Inc., 991 F. Supp. 1370--§ 8
New York Times Co. v Sullivan (1964) 376 US 254, 11 L Ed 686, 84 S Ct 710, 95 ALR2d 1412--§ 1[a]
Totten v Sun Printing & Pub. Asso. (1901, CC NY) 109 F 289--§§ 3, 5[a]
Wetzel v Gulf Oil Corp. (CA9 Ariz) 455 F2d 857--§ 6[b]

### ARIZONA

Modla v Parker, 17 Ariz App 54, 495 P2d 494--§ 8

### CALIFORNIA

Campbell v Jewish Committee for Personal Service (1954) 125 Cal App 2d 771, 271 P2d 185--§ 5[b]
Taylor v Glotfelty (1952, CA 6 Ky) 201 F2d 51--§ 5[b]

### COLORADO

Coulter v Barnes (1922) 71 Colo 243, 205 P 943--§ 5[b]
Fort v Holt (Colo App) 508 P2d 792--§§ 3, 5[b]
Republican Pub. Co. v Miner (1893) 3 Colo App 568, 34 P 485--§ 5[a]
Republican Pub. Co. v Mosman (1890) 15 Colo 399, 24 P 1051--§§ 3, 7[a]
Wertz v Lawrence (1919) 66 Colo 55, 179 P 813--§§ 4, 6[a]

### FLORIDA

Bencomo v Morgan (Fla App) 210 So 2d 236--§§ 7[b], 8
De Moya v Walsh (1983, Fla App D3) 441 So 2d 1120, 9 Media L R 2527--§ 6 [b]
Eastern Air Lines, Inc. v Gellert (1983, Fla App D3) 438 So 2d 923--§§ 5 [a], 6[a]

### GEORGIA

Barry v Baugh (1965) 111 Ga App 813, 143 SE2d 489, 23 ALR3d 645--§§ 4, 6[b]
Garrett v Lockheed Aircraft Corp. (1958) 98 Ga App 443, 106 SE2d 333--§ Stewart v Swift Specific Co. (1886) 76 Ga 280--§ 7[a]

### HAWAII

Russell v American Guild of Variety Artists (Hawaii) 497 P2d 40--§ 5[b]

### ILLINOIS

"paranoiac." Dowie v Priddle (1905) 216 Ill 553, 75 NE 243--§ 5[a]
Cavanagh v Elliott (1933) 270 Ill App 21--§ 7[a]
Clifford v Cochrane (1882) 10 Ill App 570--§ 5[a]
Cowper v Vannier (1959) 20 Ill App 2d 499, 156 NE2d 761--§ 3
Gogerty v Covins (1955) 5 Ill App 2d 74, 124 NE2d 602--§ 7[b]
Welch v Chicago Tribune Co. (Ill App) 340 NE2d 539--§ 7[a]

### INDIANA

Abrams v Smith (1846, Ind) 8 Blackf 95--§ 4
Dunn v Hall (1849) 1 Ind 344--§ 7[a]
Powers v Gastineau (1991, Ind App) 568 NE2d 1020--§ 5[a]

### IOWA

Higgins v Gordon Jewelry Corp. (1988, Iowa App) 433 NW2d 306--§ 8

KENTUCKY

McClintock v McClure (1916) 171 Ky 714, 188 SW 867--§§ 3, 5[a]

LOUISIANA

Ferlito v Cecola (1982, La App) 419 So 2d 102--§ 8
McGowen v Prentice (La App) 341 So 2d 55--§§ 6[b], 8

MASSACHUSETTS

Brauer v Globe Newspaper Co. (1966) 351 Mass 53, 217 NE2d 736--§§ 3, 7 [a]
Joannes v Burt (1863) 88 Mass (6 Allen) 236--§ 6[b]
Joyce v Globe Newspaper Co. 355 Mass 492, 245 NE2d 822--§ 5[b]

MICHIGAN

Everest v McKenny (1917) 195 Mich 649, 162 NW 277--§ 5[b]
Kenney v Hatfield (1958) 351 Mich 498, 88 NW2d 535--§§ 3, 5[b]
Morvay v Maghielse Tool & Die Co. (1983, CA6 Mich) 708 F2d 229, 31 BNA FEP Cas 1471, 113 BNA LRRM 2704, 32 CCH EPD ¶  4, 97 CCH LC ¶ 10152 (applying Michigan law)--§ 8

MISSISSIPPI

Hines v Shumaker (1910) 97 Miss 669, 52 So 705--§ 7[a]

MISSOURI

Dobbin v Chicago, R. I. & P. R. Co. (1911) 157 Mo App 689, 138 SW 682--§ 7[a]

NEBRASKA

Fitzgerald v Young (1911) 89 Neb 693, 132 NW 127--§§ 4, 6[a]

NEW MEXICO

Stewart v Ging (1958) 64 NM 270, 327 P2d 333--§§ 3, 7[a]

NEW YORK

"insane." Wemple v Delano (1946) 187 Misc 710, 65 NYS2d 322--§ 5[a]
Bishop v New York Times Co. (1922) 233 NY 446, 135 NE 845--§§ 3, 5[a]
Bornmann v Star Co. (1903) 174 NY 212, 66 NE 723--§ 7[a]
Brill v Brenner, 62 Misc 2d 102, 308 NYS2d 218--§§ 7[b], 8
Brunstein v Almansi (1947, Sup) 71 NYS2d 802--§§ 3, 5[a]
Carpenter v Hammond (1886, Sup) 1 NYSR 551--§ 7[a]
Cowan v Time, Inc. (1963) 41 Misc 2d 198, 245 NYS2d 723--§ 7[b]
Gressman v Morning Journal Asso. (1910) 197 NY 474, 90 NE 1131--§ 5[a]
Gunsberg v Roseland Corp. (1962) 34 Misc 2d 220, 225 NYS2d 1020--§§ 4, 8
Hussey v New York Recorder Co. (1895, Sup) 69 NYSR 441, 35 NYS 49--§ 3
Hyatt v Salisbury (1955) 207 Misc 785, 143 NYS 2d--§ 8
Hyatt v Salisbury (1955) 207 Misc 785, 143 NYS2d 162--§ 4
Krug v Pitass (1900) 162 NY 154, 56 NE 526--§ 7[a]
Lawson v Morning Journal Asso. (1898) 32 App Div 71, 52 NYS 484--§ 5[a]
Lynott v Pearson (1910) 138 App Div 306, 122 NYS 986--§§ 4, 6[a]
Moore v Francis (1890) 121 NY 199, 23 NE 1127--§§ 3, 4, 5[a]
Musacchio v Maida (1954, Sup) 137 NYS2d 131--§§ 4, 6[a]
Perkins v Mitchell (1860) 31 Barb 461--§ 3
Perkins v Mitchell (1860, NY) 31 Barb 461--§ 5[a]
Schumann v Loew's Inc. (1954, Sup) 135 NYS2d 361--§ 5[b]
Stein v Trager (1962) 36 Misc 2d 227, 232 NYS2d 362--§§ 4, 6[b]
Wemple v Delano (1946) 187 Misc 710, 65 NYS2d 322--§ 3

NORTH CAROLINA

Alpar v Weyerhaeuser Co. 20 NC App 340, 201 SE2d 503--§§ 3, 5[a]
Towne v Cope, 32 NC App 660, 233 SE2d 624--§§ 6[b], 8

NORTH DAKOTA

Meyerle v Pioneer Pub. Co. (1920) 45 ND 568, 178 NW 792--§§ 3, 7[a]

OHIO

Goldrick v Levy (1881) 8 Ohio Dec Reprint 146, 6 WL Bull 20--§ 6[b]

OKLAHOMA

Dawkins v Billingsley (1918) 69 Okla 259, 172 P 69, 12 ALR 144--§§ 3, 7[a]
Taylor v McDaniels (1929) 139 Okla 262, 281 P 967, 66 ALR 1246--§§ 3, 7[a]

OREGON

Demers v Meuret (Or) 512 P2d 1348--§ 6[a]
Thomas v Bowen (1896) 29 Or 258, 45 P 768--§§ 3, 7[a]

PENNSYLVANIA

Fram v Yellow Cab Co. (DC Pa) 380 F Supp 1314 (applying Pennsylvania law)-- §§ 6[b], 8
Hoover v Peerless Publications, Inc. (1978, ED Pa) 461 F Supp 1206 (applying Pennsylvania law)--§ 7[a]
Kryeski v Schott Glass Technologies, Inc. (1993, Pa Super) 626 A2d 595--§ 6[b]
Seip v Deshler (1895) 170 Pa 334, 32 A 1032--§§ 3, 5[a]
Wildee v McKee (1885) 111 Pa 335, 2 A 108--§§ 4, 6[a]
Wood v Boyle (1896) 177 Pa 620, 35 A 853--§§ 3, 7[a]

SOUTH CAROLINA

Capps v Watts (1978, SC) 246 SE2d 606--§ 7[a]
Prentiss v Nationwide Mut. Ins. Co., 256 SC 141, 181 SE2d 325--§ 7[b]

TENNESSEE

Lackey v Metropolitan Life Ins. Co. (1943) 26 Tenn App 564, 174 SW 2d 575-- § 6[a]
Lackey v Metropolitan Life Ins. Co. (1943) 26 Tenn App 564, 174 SW2d 575--§ 4

TEXAS

Crum v American Airlines, Inc. (1991, CA5 Tex) 946 F2d 423, 57 BNA FEP Cas 392, 7 BNA IER Cas 415, 57 CCH EPD ¶ 41075, : CCH LC ¶ 56794, 21 FR Serv 3d 262 (applying Texas law)--§ 7[b]
Hibdon v Moyer (1917, Tex Civ App) 197 SW 1117--§§ 3, 7[a]

UTAH

Berry v Moench (1958) 8 Utah 2d 191, 331 P2d 814, 73 ALR2d 315--§ 5[a]

VIRGINIA

Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR 2d (applying Virginia law)--§ 3
Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR2d 988 (applying Virginia law)--§ 5[a]
Mills v Kingsport Times-News (1979, WD Va) 475 F Supp 1005 (applying Virginia law)--§ 3

WASHINGTON

Chambers v Leiser (1906) 43 Wash 285, 86 P 627--§§ 3, 7[a]

WISCONSIN

Candrian v Miller (1898) 98 Wis 164, 73 NW 1004--§§ 3, 7[a]
Hellstern v Katzer (1899) 103 Wis 391, 79 NW 429--§§ 4, 6[a]
Wandt v Hearst's Chicago American (1906) 129 Wis 419, 109 NW 70--§§ 3, 5[a]

ARTICLE

I. Introduction

§ 1. Preliminary matters

[a] Scope

This annotation [FN1] collects the cases involving the question whether or not an imputation of mental disorder or incapacity, or impairment of mental faculties, [FN2] is actionable [FN3] as libel or slander [FN4] when spoken or written, or broadcasted, [FN5] concerning a private person. [FN6]

[FN1]. This annotation supersedes 66 ALR 1257.
The annotation in 6 ALR2d 1008, insofar as any cases therein are also within the scope of this annotation, need no longer be cons    d.

[FN2]. The cases in this annotation are limited to those in which the words sued upon as defamatory charge directly or by innuen
some mental irregularity, rather than inability to perform a job or to function in human society because of other factors, such as l   of
education, poor judgment, short temper, lack of ambition, or immorality.

[FN3]. Questions concerning the truth or falsity of the charge, malice, publication, or privilege are discussed only to the extent such discussion is necessary to an understanding of the question of whether or not the action can be maintained.

[FN4]. As to civil liability for insulting or abusive language not amounting to defamation, see 15 ALR2d 108.

[FN5]. Excluded also are situations in which the alleged statement was made in lunacy or other judicial proceedings. See in this connection, 2 ALR 1582, statement or testimony in lunacy proceedings as privileged within law of libel and slander; 32 ALR2d (libel and slander: statements in briefs as privileged); 42 ALR2d 825 (libel and slander: findings, report, or the like, of judge or pers ding in judicial capacity as privileged); 73 ALR2d 325 (libel and slander: privilege of statements by physician, surgeon, or nurse con ing patient, especially §§ 7, 8, thereof, dealing with statements or testimony in lunacy and other judicial proceedings).

[FN6]. As to charges against public officers or employees, or charges against candidates for public office, see the annotations i ALR2d 8 (libel and slander: actionability of statement imputing incapacity, inefficiency, misconduct, fraud, dishonesty, or the li public officer or employee); 95 ALR2d 1450 (constitutional aspects of libel or slander of public officials); 19 ALR3d 1361 (libel a slander: who is public official or otherwise within the federal constitutional rule requiring public officials to show actual malice). The reader's attention is called to the fact that a person who is held to be a "public figure" may be subject to the federal consti nal rule established by 1964 decisions of the United States Supreme Court (the leading case is New York Times Co. v Sullivan (196 76 US 254, 11 L Ed 686, 84 S Ct 710, 95 ALR2d 1412), and requiring public officials suing for libel or slander to show actual malic order to recover. See in this connection 19 ALR3d 1361 § 8. Cases within the scope of this annotation, which conceivably might olve a so-called "public figure," but which predate such federal constitutional rule, should of course be considered in the light of such . While the decisions in some states turn on the effect of statutory provisions creating actions for defamation, or defining libel an slander, statutory law is not represented herein except as it is reflected in reported decisions within the scope of the annotation hence the reader is advised to consult the current statutes of his jurisdiction.

[b] Related matters

Criticism or Disparagement of Dentist's Character, Competence, or Conduct as Defamation. 120 ALR5th 483.
Libel or slander: defamation by statement made in jest. 57 ALR4th 520.
Libel and slander: defamation by cartoon. 52 ALR4th 424.
Libel and slander: defamation by photograph. 52 ALR4th 488.
Excessiveness or inadequacy of compensatory damages for defamation. 49 ALR4th 1158.
Criticism or disparagement of attorney's character, competence, or conduct as defamation. 46 ALR4th 326.
Defamation: privilege accorded state or local governmental administrative records relating to private individual member of publ ALR4th 318.
Criticism or disparagement of physician's or dentist's character, competence, or conduct as defamation. 38 ALR4th 836.
Defamation of psychiatrist, psychologist, or counselor. 38 ALR4th 874.
State constitutional protection of allegedly defamatory statements regarding private individual. 33 ALR4th 212.
Defamation: loss of employer's qualified privilege to publish employee's work record or qualification. 24 ALR4th 144.
Imputation of homosexuality as defamation. 3 ALR4th 752.
Libel and slander: actionability of statements inputing inefficiency or lack of qualification to public school teacher. 40 ALR3d 490
Defamation: actionability of accusation or imputation of tax evasion. 32 ALR3d 1427.
Liability for malicious prosecution predicated upon institution of, or conduct in connection with, insanity proceedings. 30 ALR3d
Liability for false imprisonment predicated upon institution of, or conduct in connection with, insanity proceedings. 30 ALR3d 52
Libel and slander: who is a public official or otherwise within the federal constitutional rule requiring public officials to show actu malice. 19 ALR3d 1361.
Libel and slander: actionability of charge of being a "slut," "bitch," or "son of a bitch.". 13 ALR3d 1286.
Libel and slander: charge of being a "crook.". 1 ALR3d 844.
Comment Note.--Constitutional aspects of libel or slander of public officials. 95 ALR2d 1450.
Defamatory nature of statements reflecting on plaintiff's religious beliefs, standing, or activities. 87 ALR2d 453.
Defamatory nature of utterances or statements made, or articles written, in jest. 77 ALR2d 612.
Libel and slander: privilege of statements by physician, surgeon, or nurse concerning patient. 73 ALR2d 325.
Defamation by acts, gestures, pantomime, or the like. 71 ALR2d 808.
Libel and slander: actionability of statement imputing incapacity, inefficiency, misconduct, fraud, dishonesty, or the like to public :er or employee. 53 ALR2d 8.
Injunction as remedy against defamation of person. 47 ALR2d 715.
Liability for statement or publication representing plaintiff as cruel to or killer of animals. 39 ALR2d 1388.
Civil liability for insulting or abusive language not amounting to defamation. 15 ALR2d 108.
Libel and slander: words reflecting upon one in his character as employee as actionable per se. 6 ALR2d 1008.
Libel and slander: what imputations against clergyman are actionable. 53 ALR 637.
Libel and slander: imputing disease as actionable per se. 45 ALR 1114.
Abusive words as slander or libel. 37 ALR 883.
Statement or testimony in lunacy proceedings as privileged within law of libel and slander. 2 ALR 1582.

§ 2. Summary and comment

[a] In general

A libel is a malicious publication, expressed either in printing or writing, or by signs and pictures, tending to blacken either the m ry of one who is dead, or the reputation of one who is alive, and expose him to public hatred, contempt, or ridicule. In some jurisdic s libel is defined by statute, and the statutory definition of criminal libel has in some instances been accepted as applicable to civil ns for libel. To be libelous it is essential that the matter be published by writing, printing, picture, effigy, or otherwise in accordance the common-law or statutory definition of libel which obtains in the particular jurisdiction. [FN7]

[FN7]. Am Jur, Libel and Slander (1st ed § 3).

The term "slander" was formerly used to include both libel and slander, as those terms are now understood, but in modern times

term "slander" is ordinarily confined to defamatory words spoken. Slander, as now understood, has been defined as the speak
base and defamatory words which tend to prejudice another in his reputation, office, trade, business, or means of livelihood. I
sometimes defined by statute. [FN8]

[FN8]. Am Jur, Libel and Slander (1st ed § 3).

Although the cases dealing with the actionability of imputing to a private person mental disorder or incapacity, or impairment c
faculties, are decided on the basis of the facts of the particular case, it should be kept in mind that certain general principles of
of defamation are reflected therein. Thus, the question of actionability in the individual case may turn on the truthfulness of th
or the other usual defenses applicable to libel and slander actions generally. The basic question whether the words are actional
depends on such factors as whether they are related to plaintiff's trade or occupation, whether they hold the plaintiff up to ridic
contempt, etc., or whether, if the words are written, they come within the statutory definition of libel.
Imputations of insanity or the impairment of mental faculties have generally been held to be libelous per se and actionable witl
special damages when published of a private person, by means of written, printed, or pictorial matter. [FN9] This general rule
applied in a number of cases both to publications imputing insanity [FN10] and publications imputing a mental deficiency not a
to insanity. [FN11]

[FN9]. § 3, infra.

[FN10]. § 5, infra.

[FN11]. § 7, infra.

As contrasted with written or printed imputations, oral imputations of insanity or impairment of mental faculties have generally
held to be slanderous per se and actionable without special damages only when they are spoken in relation to the business,
employment, occupation, office, or profession of the private person about whom they are spoken, [FN12] and conversely, such
imputations which are not spoken of a private person in his business, employment, occupation, office, or profession have been
be actionable only if special damage is pleaded and proved. [FN13]

[FN12]. § 4, infra.

[FN13]. § 4, infra.

This general rule has been applied in a number of cases both to oral imputations as to insanity [FN14] and to oral imputations a
mental deficiency not amounting to insanity. [FN15]

[FN14]. § 6, infra.

[FN15]. § 8, infra.

[b] Practice pointers

Those admonitions of carefulness with respect to matters of investigation, pleading, and evidence applicable in actions for defam
generally, are applicable in that area which constitutes the present subject of annotation.
Since oral imputations of insanity or impairment of mental faculties, as distinguished from written or printed imputations to the
effect, [FN16] are not defamatory per se and are not actionable without pleading or proof of special damages unless they are ut
with respect to the plaintiff's business, occupation, or profession, [FN17] counsel for the plaintiff where oral imputations are invc
should make every effort to establish that the plaintiff was or might have been harmed in his business, occupation, or professior
[FN18]

[FN16]. § 3, infra.

[FN17]. § 4, infra.

[FN18]. § 6[a], infra.

Counsel for the defendant, on the other hand, should attempt to show as a defense to oral imputations that they were not uttere
respect to, or did not affect, the plaintiff in his business, occupation, or profession, and hence are not actionable unless special d
are pleaded and proved. [FN19]

[FN19]. § § 6[b], 8, infra.

Counsel for the defendant should also consider as a possible defense, showing that the words were uttered in jest and were so
understood by those to whom they were published and urging that they are not therefore actionable even though on their face th
defamatory. [FN20]

[FN20]. See annotation in 77 ALR2d 612.

II. General considerations

§ 3. Rule as to written or printed imputations (libel)

Imputations of insanity or the impairment of mental faculties have generally been held or recognized as libelous per se and actior
without special damages when published of a private person, by means of written, printed, or pictorial matter.

US--Totten v Sun Printing & Pub. Asso. (1901, CC NY) 109 F 289; For federal cases involving state law, see state headings infra.

Colo--Republican Pub. Co. v Mosman (1890) 15 Colo 399, 24 P 1051.

Del--State v Roberts (1896) 16 Del (2 Marv) 450, 43 A 252.

Ill--Cowper v Vannier (1959) 20 Ill App 2d 499, 156 NE2d 761.

Ky--McClintock v McClure (1916) 171 Ky 714, 188 SW 867.

Mich--Kenney v Hatfield (1958) 351 Mich 498, 88 NW2d 535.

NM--Stewart v Ging (1958) 64 NM 270, 327 P2d 333.

NY--Moore v Francis (1890) 121 NY 199, 23 NE 1127, 8 LRA 214; Bishop v New York Times Co. (1922) 233 NY 446, 135 NE 84 Wemple v Delano (1946) 187 Misc 710, 65 NYS2d 322; Brunstein v Almansi (1947, Sup) 71 NYS2d 802, affd 273 App Div 809, NYS2d 837; Perkins v Mitchell (1860) 31 Barb 461; Hussey v New York Recorder Co. (1895, Sup) 69 NYSR 441, 35 NYS 49.

NC--Alpar v Weyerhaeuser Co. 20 NC App 340, 201 SE2d 503, cert den 285 NC 85, 203 SE2d 57.

ND--See Meyerle v Pioneer Pub. Co. (1920) 45 ND 568, 178 NW 792.

Okla--Dawkins v Billingsley (1918) 69 Okla 259, 172 P 69, 12 ALR 144; Taylor v McDaniels (1929) 139 Okla 262, 281 P 967, 6( 1246.

Or--See Thomas v Bowen (1896) 29 Or 258, 45 P 768.

Pa--Seip v Deshler (1895) 170 Pa 334, 32 A 1032; Wood v Boyle (1896) 177 Pa 620, 35 A 853.

Tex--Hibdon v Moyer (1917, Tex Civ App) 197 SW 1117.

Va--Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR 2d 988, cert den 338 US 858, 94 L Ed 525, 70 S Ct 100 (applying Virginia law pursuant to New York conflict of laws rule).

Wash--Chambers v Leiser (1906) 43 Wash 285, 86 P 627.

Wis--Wandt v Hearst's Chicago American (1906) 129 Wis 419, 109 NW 70, 6 LRA NS 919.
See also Candrian v Miller (1898) 98 Wis 164, 73 NW 1004.
The following statements illustrate the language in which various courts have expressed the general rule.
In Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR 2d 988, cert den 338 US 858, 94 L Ed 525, 70 S Ct 100, court noted that it is the general law that it is libelous per se to say that a person is insane or of unstable mind.
Statement in letter that plaintiff was at one time confined to insane asylum was not libelous, since it did not tend to render him contemptible or ridiculous in public estimation, nor did it expose him to public hatred or hinder virtuous men from associating w im.
Fort v Holt (Colo App) 508 P2d 792.
In Cowper v Vannier (1959) 20 Ill App 2d 499, 156 NE2d 761, the court noted that there appears to be unanimity of agreement ing the authorities that a publication imputing insanity or impairment of mental faculties is libelous per se, the basis for such rule be :he ridicule or contempt involved in such a charge which may tend to deprive the person so charged of his right of social intercourse Similarly, the court in Kenney v Hatfield (1958) 351 Mich 498, 88 NW2d 535, stated that it is generally held that a publication in ing impairment of mental faculties is libelous per se.
The court in Wemple v Delano (1946) 187 Misc 710, 65 NYS2d 322, said that the publication of written words imputing insanity ie impairment of mental faculties or want of mental capacity is actionable per se, whether it does or does not affect the business, profession, or office of the person concerning whom the words are written or printed. It seems clear, added the court, that a wri or printed statement containing such an imputation tends to injure the reputation of a person, and that it certainly exposes him to aversion and ostracism and deprives him of the confidence and free intercourse of society.
In Brunstein v Almansi (1947, Sup) 71 NYS2d 802, affd 273 App Div 809, 76 NYS2d 837, the court stated that a reference to a ɩ ɔn as being insane, in the case of a writing, is actionable without any showing of special damages, and that it is not necessary that language complained of be published in connection with the person's profession.
And in Dawkins v Billingsley (1918) 69 Okla 259, 172 P 69, 12 ALR 144, the court referred approvingly to the rule that publicatic imputing mere impairment of mental faculties or intellectual weakness not amounting to insanity are libelous per se.
Newspaper account falsely stating murder defendant had been committed to state mental hospital for psychiatric evaluation prio trial was not actionable per se, but libel per quod action would lie if jury decided erroneous report cast imputation of insanity on itiff and, if so, whether it had effect on average reader that literal truth would not have produced; plaintiff could recover if such effec re established and special damages were shown. Mills v Kingsport Times-News (1979, WD Va) 475 F Supp 1005 (applying Va law).
In Brauer v Globe Newspaper Co. (1966) 351 Mass 53, 217 NE2d 736, it was recognized that a false imputation that a person is mentally retarded falls within the definition of a defamatory publication as one which tends to injure one's reputation in the comr ty and to expose him to hatred, ridicule, and contempt, an imputation of crime or of bad character or an injury in one's office or bu ;s not being essential.

§ 4. Rule as to oral imputations (slander)

Oral imputations of insanity or impairment of mental faculties have generally been held or recognized as slanderous per se and actionable without special damages when they are spoken with reference to the business, employment, occupation, office, or pro on of the private person about whom they are spoken.

Colo--Wertz v Lawrence (1919) 66 Colo 55, 179 P 813, later app 69 Colo 540, 195 P 647.

Neb--Fitzgerald v Young (1911) 89 Neb 693, 132 NW 127.

NY--Lynott v Pearson (1910) 138 App Div 306, 122 NYS 986; Musacchio v Maida (1954, Sup) 137 NYS2d 131.

Pa--Wildee v McKee (1885) 111 Pa 335, 2 A 108.

Tenn--Lackey v Metropolitan Life Ins. Co. (1943) 26 Tenn App 564, 174 SW2d 575.

Wis--Hellstern v Katzer (1899) 103 Wis 391, 79 NW 429.
In Moore v Francis (1890) 121 NY 199, 23 NE 1127, 8 LRA 214, the court said that the authorities tend to support the proposition that spoken words imputing insanity are actionable per se when spoken of one in his trade or occupation, but not otherwise, without proof of special damage.
And in Musacchio v Maida (1954, Sup) 137 NYS2d 131, the court said that words charging the plaintiff with being mentally unbalanced, and thus holding him up to ridicule or contempt, are actionable without showing special damages when the language complained of is in reference to the plaintiff's profession.
Conversely, oral imputations of mental irregularity which are not spoken of a private person in his business, employment, occupation, office, or profession have been held to be actionable only if special damage is pleaded and proved.

Ga--Barry v Baugh (1965) 111 Ga App 813, 143 SE2d 489, 23 ALR3d 645.

Mass--Joannes v Burt (1863) 88 Mass (6 Allen) 236.

NY--Hyatt v Salisbury (1955) 207 Misc 785, 143 NYS2d 162; Gunsberg v Roseland Corp. (1962) 34 Misc 2d 220, 225 NYS2d 1; Stein v Trager (1962) 36 Misc 2d 227, 232 NYS2d 362.
Two early cases contain dicta to the effect that oral imputation of insanity or mental impairment is nondefamatory and not actionable. See Abrams v Smith (1846, Ind) 8 Blackf 95; Mayrant v Richardson (1818) 10 SCL (1 Nott & M'C) 347.

### III. Determinations with respect to particular imputations

#### A. As to insanity

§ 5. Written or printed imputations

[a] Actionability established

In application of the general rule as to written or printed publications imputing insanity, [FN1] it has been held in a number of cases that such a publication concerning a private person was libelous per se and actionable without special damages, primarily because it exposed such person to ridicule, contempt, hatred, disgrace, or the like.

[FN1]. § 3, supra.
Thus, a newspaper article describing the plaintiff as having such a "mania for destruction" that she wreaked her vengeance on chickens, and household pets, by scattering poison about the neighborhood; that she poisoned a cow; tried to take her own life and attempted the destruction of a family against whom she had some kind of a grudge; and speaking of her as guilty of "eccentricities that can be accounted for on no other hypothesis than insanity," was held to be libelous and actionable upon its face, in Republican Co. v Miner (1893) 3 Colo App 568, 34 P 485. The court stated that a libelous publication is one which charges or imputes to any person that which renders him liable to punishment, or which is calculated to make him the subject of hatred, odium, contempt, or ridicule. The obvious tendency of the publication in this instance, taken as a whole, said the court, was to fasten suspicion of attempted murder upon the plaintiff, and was therefore actionable on that ground as well as being libelous in respect of describing the plaintiff as having a "mania for destruction." It was pointed out that this was not slander, but libel, and that the power of the press to make and unmake reputations is so great that words which would not be the subject of a suit if spoken are actionable when printed and published in a newspaper.
See Eastern Air Lines, Inc. v Gellert (1983, Fla App D3) 438 So 2d 923, later proceeding (Fla App D3) 452 So 2d 570, § 6[a].
In action by director of center for developmentally disabled persons in which director alleged that husband of woman who headed a different program, which was competing with center for public funds, defamed him in letters to county commissioners and council members urging them to support wife's program rather than director's center, court did not err in entering judgment on jury verdict for director where husband's letter stated that director was "lunatic," where husband testified that he used word only to mean "fool," some where fact question was therefore presented as to whether word was susceptible of defamatory meaning, and where director overcame qualified privilege through husband's testimony that he had no basis for saying that director was mentally or emotionally unstable (p) husband was also liable for republication of letters at public board meeting or in local newspaper. Powers v Gastineau (1991, Ind App) 568 NE2d 1020.
A letter from the local agent of a bonding company to the state agents of the company containing statements that the plaintiff's mother had lost her mind, that a sister had also lost her mind, and that while at present the plaintiff seemed to be all right, he had done some things in the last year which did not look exactly right, was held to be defamatory and libelous per se in McClintock v McClure (1916) 171 Ky 714, 188 SW 867. Although reversing judgment for the plaintiff on other grounds, the court stated that regardless of the original basis of the action as one in conspiracy to injure the plaintiff's business, the action had developed, when ready for submission to the jury, into one for libel purely and simply. The court said that it was clear that the letter as a whole, and in its statements specifically set out in the petition, charged not only that certain of plaintiff's relatives had been insane, and by necessary inference or implication imputed to plaintiff a hereditary predisposition to insanity, but went much further, and presented a mixed question of law and fact of whether it contained the implication that the plaintiff had done things that indicated to the defendant a manifestation on the part of plaintiff of impending insanity. Rejecting the defendant's contention that a motion for a peremptory instruction in his behalf should have been sustained, based upon the theory that the letter and the statements therein objected to were not libelous per se since they were qualifiedly privileged, and that such privilege nullified the presumption of malice ordinarily inherent in words that are libelous per se, the court stated that the fact that the publication was made in a qualifiedly privileged communication simply relieved the publication from the presumption of malice but did not change the actionable quality of the words published, merely an evidentiary distinction and nothing more.
See also Lawson v Morning Journal Asso. (1898) 32 App Div 71, 52 NYS 484, an action for an alleged libel consisting of an article published by the defendant, which charged that the plaintiff was insane along with her two sisters. The two sisters were confined

insane persons, but the plaintiff had never been determined to be a lunatic, and was never confined in an asylum for lunacy. W    s
reversing a judgment for plaintiff on other grounds the court apparently assumed without discussion that the charge of insanit
libelous.
Words contained in a letter from defendant to plaintiff's wife charging plaintiff with being insane were held to be actionable wit    any
showing of special damage as a reference to a person which holds him up to hatred, contempt, or ridicule, in Brunstein v Alma
(1947, Sup) 71 NYS2d 802, affd 273 App Div 809, 76 NYS2d 837. The court denied defendant's motion to dismiss the complaii
stating that it is not necessary that the language complained of be published in connection with plaintiff's profession in the case    a
writing. This is only necessary, said the court, in a suit for slander.
It was held in Perkins v Mitchell (1860, NY) 31 Barb 461, that it was clearly libelous for the defendant physician to publish of th
plaintiff that he was "insane, and a fit person to be sent to the lunatic asylum," that he was "so disordered in his senses as to e    nger
the persons of other people, if left unrestrained," and that it was "dangerous to permit him longer to go at large." The court sa    at
there is no definition of libel which has ever been received by the courts which will not include such a charge as this, that the w    s set
the plaintiff in an odious light, and exposed him to public contempt and aversion, and that the charge was aggravated by the fe    nat it
was backed by the professional skill and authority of a medical man. On the issue of whether or not special damages would ha    be
alleged, the court held that the only cases in which it is necessary to allege the manner in which the publication has injured the    intiff
are cases where it is of such a character that the court cannot see that its tendency and effect would be to defame or degrade
plaintiff, or to render him odious or contemptible. The obvious import and effect of such a charge as that now before the court    held
to be degrading and injurious, and needed no averments in the complaint to point out its tendency to so degrade and injure.
Interoffice communication which advised that plaintiff employee was clinically paranoid, although privileged, was libelous per s‹    par v
Weyerhaeuser Co. 20 NC App 340, 201 SE2d 503, cert den 285 NC 85, 203 SE2d 57.
A letter from the defendant doctor and to another doctor requested by the family of a girl who was to marry plaintiff, containin    libel,
report that plaintiff had been treated as a manic-depressive with a psychopathic personality, among other things, was held to t    ses
defined as a false and unprivileged publication in writing which assails the honesty, integrity, or virtue of another, and thereby
him to hatred, contempt, or ridicule, or tends to injure him in his occupation, in Berry v Moench (1958) 8 Utah 2d 191, 331 P2    4, 73
ALR2d 315. Reversing judgment for the defendant, the court stated that the letter could be regarded as exposing plaintiff to ha    ,
contempt, or ridicule, or tending to injure him in his occupation.
Wandt v Hearst's Chicago American (1906) 129 Wis 419, 109 NW 70, 6 LRA NS 919, was a libel action based on the plaintiff's ;    re,
with a different name, having been inserted in defendant's newspaper under headlines and an article that charged the person i
picture with having a "suicidal mania." Affirming judgment for plaintiff on a demurrer to the complaint, the court stated that it i
elementary that written or printed publications which falsely tend to bring the plaintiff into public disgrace, contempt, or ridicul‹
libelous, and that a libel need not be in printed language, but that a caricature, or picture, or effigy, with or without printed lan    ie,
which is understood to refer to the plaintiff, and which has the tendency to bring disgrace, contempt, or ridicule upon the plaint    s
libelous. It was concluded that a printed statement to the effect that a person is a "suicide fiend," has attempted suicide 25 tim    ind
would usually go to the hospital and ask to be pumped out, certainly has a tendency to bring that person into public contempt ;
ridicule.
Also held to be libelous per se have been--
--a publication in a newspaper imputing to certain persons acts of "insane political persecution." State v Roberts (1896) 16 Del    lary)
450, 43 A 252 (criminal libel).
--a newspaper article that triplet sisters (one of whom was the plaintiff) had been declared "insane" and sent to an asylum, wit
caption "Crazy triplets--one sister takes another to Bellevue, a third visits them, and all are declared lunatics." Hussey v New Y
Recorder Co. (1895, Sup) 69 NYSR 441, 35 NYS 49.
--a newspaper story stating that the plaintiff, the editor of a rival newspaper, had become "insane" and was being confined in h    fice
by his friends, who had put him in a straitjacket, shaved his head, and confined him to bread and water. Southwick v Stevens (    3,
NY) 10 Johns 443.
--a publication which, by innuendo, charged the plaintiff with having been of unsound mind and in consequence thereof with ha
been removed from a position as a professor in a scientific school. Totten v Sun Printing & Pub. Asso. (1901, CC NY) 109 F 289
--a publication that the plaintiff was an "insane fanatic," "a poor, insane lunatic," and a "paranoiac." Dowie v Priddle (1905) 216    53,
75 NE 243.
--a newspaper article stating that the plaintiff nurse became "insane" after she fell in love with a married patient whom she did
know was married. Gressman v Morning Journal Asso. (1910) 197 NY 474, 90 NE 1131.
--the publication of a copy of a letter from the alleged paramour of the plaintiff's husband to the defendant newspaper charging    : the
plaintiff was "mentally unbalanced" and was addicted to the excessive use of alcohol and drugs. Bishop v New York Times Co. (    :)
233 NY 446, 135 NE 845.
--a newspaper article containing an imputation that the plaintiff was "insane." Wemple v Delano (1946) 187 Misc 710, 65 NYS2    2.
--a letter imputing "insanity" to the plaintiff. Seip v Deshler (1895) 170 Pa 334, 32 A 1032.
--a newspaper article about a certain crime, as to which the plaintiff had been a witness at the trial, stating that the plaintiff ha    :e
been a patient in a mental institution. Mattox v News Syndicate Co. (1949, CA2 NY) 176 F2d 897, 12 ALR2d 988, cert den 338    58,
94 L Ed 525, 70 S Ct 100 (applying Virginia law pursuant to New York conflict of laws rule).
Where a written publication imputing insanity to a private person is made in reference to his occupation or profession, it is a for
libelous per se.
And to say of an architect, "I think he is crazy," in an interview with a newspaper reporter which was subsequently published, w    eld
to be defamatory and actionable per se in Clifford v Cochrane (1882) 10 Ill App 570. Although the action was for libel, it was ap    int
from the opinion that at that time libel was only a written slander and was governed by the same legal principles as slander, rat    than
being a separate and distinct action provided for by statute. The court said that the words were spoken of the plaintiff in his prc    ion
and thus were actionable per se, even without special damages, and that the charge that he was "crazy" was tantamount to a c    :
and positive assertion that he was destitute of the necessary qualifications for the proper discharge of the duties of an architect
Thus, words imputing to the plaintiff bank teller "mental derangement" as a consequence of which the bank had been involved i
trouble, which were published in a newspaper, were held to be libelous per se and actionable without special damages in Moore
Francis (1890) 121 NY 199, 23 NE 1127, 8 LRA 214. The court stated that since the authorities tend to support the proposition
spoken words imputing insanity are actionable per se when spoken of one in his trade or occupation but not otherwise without f    of
special damage, and since the imputation of insanity in a written or printed publication is a fortiori libelous where it would const
slander if the words were spoken, the written words here touching as they did the plaintiff in respect to his occupation as a banl    er
were libelous per se. There can be no doubt, said the court, that the imputation of insanity against a man employed in a positio
trust and confidence such as that of a bank teller, whether the insanity is temporary or not, although accompanied by the expla    ɔn
that it was induced by overwork, is calculated to injure and prejudice him in that employment, and especially where the stateme    s
added that in consequence of his conduct in that condition that bank had been involved in trouble.

[b] Actionability not established

A publication imputing insanity has in one instance been held not libelous per se and not actionable without a showing of special damages.
Trial court properly dismissed libel action by opponent of pornography against magazine and its publisher, based on magazine vilifying plaintiff as "Asshole of the Month" and using phrases "wacko," "vengeful hysteria," "twisted," and bizarre paranoia," w plaintiff's arguments that statements could be understood as defamatory in sense of making false statements of fact about her unavailing and it strained credulity to accept that by statements magazine was asserting that plaintiff was mentally ill. Leidholt L.F.P., Inc. (1988, CA9 Cal) 860 F2d 890, 15 Media L R 2201, cert den (US) 103 L Ed 2d 837, 109 S Ct 1532.
And see Campbell v Jewish Committee for Personal Service (1954) 125 Cal App 2d 771, 271 P2d 185, where a letter from the charitable corporation to the superintendent of a state mental hospital from which the plaintiff's brother had been released, as "Why do you turn loose patients like him," was held not to be libelous per se and not actionable without a showing of special damage
Thus, in Coulter v Barnes (1922) 71 Colo 243, 205 P 943, a libel based on an article in the defendant's newspaper stating that plaintiff had been recommitted to an insane asylum, was held not actionable without an allegation of special damages, where i appeared that the plaintiff had in fact on previous occasions been adjudged insane, although he was subsequently declared sar court said that insofar as the article was false in asserting that the plaintiff had been recommitted to an insane asylum, it was libelous per se, since it did not falsely impute insanity under the circumstances.
See Fort v Holt (Colo App) 508 P2d 792, § 3.
In action for damages resulting from letter written and published by agent for variety artists' guild to plaintiff's booking agent, agent said that plaintiff, a nightclub performer, had been committed to hospital for year after mental examination when, in fac had not been committed to hospital, letter constituted libel per se although judgment against plaintiff was affirmed, since communication was qualifiedly privileged and there was no abuse of privilege. Russell v American Guild of Variety Artists (Haw P2d 40.
Recovery for libel was denied--
--where newspaper report that plaintiff won damages against doctor who had him committed to state hospital after adjudging mentally deranged was accurate and was followed by retraction to extent that readers inferred that plaintiff had been judicially committed. Joyce v Globe Newspaper Co. 355 Mass 492, 245 NE2d 822.
In some instances recovery has been denied for libel based on publications imputing insanity, where the defendant interposed defense, such as that the statement was true or the communication was privileged.
And in Taylor v Glotfelty (1952, CA 6 Ky) 201 F2d 51, an action for an alleged libel committed when the defendant, a psychiatr medical center for federal prisoners, pronounced the plaintiff, an inmate at the center, to be suffering from "paresis," the court dismissal of the action on the ground that the statement, even if malicious, was made by the defendant in the discharge of his duties and in relation to matters committed to him for official determination.
In Everest v McKenny (1917) 195 Mich 649, 162 NW 277, LRA1917D 779, where the plaintiff student sued the defendant presi the teacher's college she was attending, for stating to the persons in charge of the plaintiff's roominghouse that she was crazy they would lose all their roomers if she remained there. After the testimony was all in, the defendant moved for a directed verc several reasons, among them that the words uttered were privileged. The trial judge directed a verdict for the defendant on the that the words uttered were privileged. On appeal the reviewing court affirmed on the issue of privilege without discussing whe not the words were actionable.
Thus, in Kenney v Hatfield (1958) 351 Mich 498, 88 NW2d 535, while recognizing that a paid political advertisement by the def judge published in the defendant newspaper justifying a subsequently voided commitment of the plaintiff for mental illness and stating that at the time of the commitment the plaintiff was mentally ill and that police records indicated that the plaintiff had t frightening women and required institutional treatment for mental illness, was libelous per se, if untrue, upheld a dismissal of t on the grounds that the factual allegations in the publication were true, the opinion allegations were reasonable, and the public was without malice.
In Schumann v Loew's Inc. (1954, Sup) 135 NYS2d 361, the plaintiffs claimed that they were the great-grand-children of Robe Schumann, the celebrated composer, that Schumann became insane, that a sister of his also suffered from the same malady, a the defendant, which had published and exhibited a motion picture which depicted Schumann's life, including the mental illness overtook him, thus invaded their right of privacy, committed an injury to their property rights, became unjustly enriched by th made from the motion picture, and committed a libel upon the memory of Schumann and upon themselves. A motion to dismis failure to state a good cause of action was granted by the court. On the cause of action for libel the court stated that the allega the complaint affirmatively admitted that Schumann and his sister were insane as depicted in the defendant's motion picture ar no cause of action in libel is made out where the complaint shows on its face that the article complained of was true.

§ 6. Oral imputations

[a] Actionability established

In application of the general rule governing oral imputations of insanity, [FN2] it has been held in a number of cases that such imputation about a private person was slanderous per se and actionable without pleading and proof of special damages, where spoken with reference to such person's business, occupation, employment, or profession.

[FN2]. § 4, supra.
See also Boice v Bradley (1950, DC Idaho) 92 F Supp 750, affd Bradley Min. Co. v Boice (CA9) 194 F2d 80, cert den 343 US 94 Ed 1347, 72 S Ct 1033, vacated on other grounds 345 US 932, 97 L Ed 1361, 73 S Ct 797, motion to file den 198 F2d 790, reh F2d 937, cert den 346 US 874, 98 L Ed 382, 74 S Ct 125, wherein the plaintiff doctor was awarded a verdict and judgment base slanderous remarks to the effect that he was crazy; that he was insane before he went to work for the defendants as a compan and manager of the company hospital, and still was insane; that he was a mental case; that he was insane and had to be kept guard to keep from harming his patients and shooting up the town; and that he committed an illegal abortion. While the judgm verdict were affirmed on appeal, the courts did not specifically discuss the actionability of the remarks that charged the plaintiff being crazy, apparently assuming that such remarks made in and about his office and hospital were slanderous per se. The pres the case of another cause of action for false imprisonment seemed to overshadow the charges of slander.
Thus, a statement by the defendant in connection with a dispute over the plaintiff teacher's punishment of the defendant's chilc the plaintiff "acted like she was crazy," was held in Wertz v Lawrence (1919) 66 Colo 55, 179 P 813, later app 69 Colo 540, 195 to be actionable per se without proof of special damages, as imputing to the plaintiff a mental condition which wholly unfitted h the duties of a teacher.

Statement by director of defendant airline's news bureau and telephone interview which was later published in newspaper that pilot was paranoid, in that he had written letters to the FBI in which he had said that defendant airline was out to get him and to crash a plane in order to kill him, and that it was "awfully hard to fire anyone these days," was not pure opinion; court found defendant made defamatory statements about plaintiff which injured him in his occupation as a pilot for which defendant could liable for compensatory damages. Punitive damages would not be allowed, however, since there was no evidence that airline k should have known that its employee would defame plaintiff, was ill-trained for his position, lacked appropriate supervision, or negligently hired; moreover, there was no proof that airline induced, directly authorized or ratified its employee's statement. E Lines, Inc. v Gellert (1983, Fla App D3) 438 So 2d 923, later proceeding (Fla App D3) 452 So 2d 570.

Similarly, upon affirming a judgment for the plaintiff teacher for slander in that the defendant in the presence of others had sai plaintiff that she was "crazy," an unmerciful liar, and unfit to teach school, the court in Fitzgerald v Young (1911) 89 Neb 693, 127, held that the circulation of such reports would injure, if not ruin, plaintiff in her profession, and that they were actionable The court approved of a jury instruction that words spoken falsely of a woman schoolteacher, that she is crazy and an unmerci and unfit to teach school, when coupled together, are actionable in themselves, or per se, and in an action of slander against th who made such a charge, it is not necessary to either allege or prove special damages in order to maintain the action.

A complaint alleging that the defendant went to the plaintiff's employer and stated that the plaintiff, who was in domestic servi "both drunk and crazy," was held in Lynott v Pearson (1910) 138 App Div 306, 122 NYS 986, to set forth a cause of action suff withstand a demurrer. The court stated that the crucial question was whether the complaint sufficiently alleged that the defend spoke the words complained of concerning the plaintiff in her business or calling as a domestic. The court concluded that the ch which was the basis of the complaint related directly to the plaintiff's calling and necessarily referred to her in the employment she was at that time engaged.

In denying motions to dismiss the plaintiff physician's eight causes of action, and, in the alternative, to strike certain matter, th in Musacchio v Maida (1954, Sup) 137 NYS2d 131, held that the charges in five of the causes of action charging the plaintiff wi disorders referred to and touched on his profession as a physician and definitely imputed unfitness on his part and qualities det to his calling and were actionable without proof of special damages, since they directly tended to injure or prejudice the reputa the plaintiff in the way of the lawful profession carried on by him.

Plaintiff, who operated airport under lease with city, made out case in slander per se in complaint alleging that defendant, while addressing airport commission which represented city in lease of airport, referred to plaintiff as "demented old man who might out and chop our airplanes up with an ax," since it was possible to interpret such words to mean that plaintiff was insane and m damage airplanes, and thus trier of fact could find that statement tended to prejudice plaintiff in his business. Demers v Meuret 512 P2d 1348.

In Wildee v McKee (1885) 111 Pa 335, 2 A 108, an action of trespass on the case for conspiracy to defame and thereby injure a in his particular avocation or business, it was held that to say of the plaintiff teacher that "the man must not be in his right min held to be actionable especially where it was coupled with allegations of a conspiracy and malice, and an averment of special da A judgment for the defendants, entered as a result of sustaining their demurrer to the complaint, was reversed, the court statir any words which impute the want of integrity or capacity, whether mental, moral, or pecuniary, in the conduct of a profession, calling, in which the party unjustly accused is engaged, are actionable.

In Lackey v Metropolitan Life Ins. Co. (1943) 26 Tenn App 564, 174 SW 2d 575, among the words sued for were those charging the plaintiff was "crazy," or imputing insanity to him. While affirming a judgment for the defendant apparently on the basis that believed that the plaintiff was crazy, the court stated that since the words were alleged to have been spoken of him in his busin they were slanderous, if false.

Upholding a verdict for the plaintiff Catholic priest in an action based on excerpts of a speech by the defendant Catholic archbisl the congregation of a church, the court in Hellstern v Katzer (1899) 103 Wis 391, 79 NW 429, held that to speak of a Catholic p an irresponsible and insane person, and as not being entirely of sane mind because he was injured in his brain in a railroad acci was slanderous per se.

[b] Actionability not established

In application of the general rule governing oral imputations of insanity, [FN3] such an imputation as to a private person has be not slanderous per se and actionable without special damages, where it was not spoken in reference to such person's occupatio employment, or profession.

[FN3]. § 4, supra.

Words "nut" and "crazy" were, at very most, libelous per quod, in context, and since there was no testimony that there was any adverse effect on business, credit rating, reputation, or social standing, there was no damage and therefore no possibility of rec even if there were publication. Wetzel v Gulf Oil Corp. (CA9 Ariz) 455 F2d 857.

Defendant's characterization of his government coworker as a "raving maniac" and "raving idiot," during course of heated profes disagreement in presence of small group of other coworkers, may have been personally insulting but did not constitute actionab slander. De Moya v Walsh (1983, Fla App D3) 441 So 2d 1120, 9 Media L R 2527.

Thus under a statute defining slander or oral defamation as imputing to another a crime punishable by law, or charging him with some contagious disorder, or being guilty of some debasing act which may exclude him from society, or charges made against a in reference to his trade, office, or profession, calculated to injure him therein, or any disparaging words productive of special da flowing naturally therefrom, special damage being required only in the last classification, it was held, in Barry v Baugh (1965) 1 App 813, 143 SE2d 489, 23 ALR3d 645, that without an allegation of special damage a complaint stating that defendant doctor I called plaintiff, a registered nurse, "crazy," could not withstand a general demurrer. The court said that mere billingsgate, insult contemptuous language, are not sufficient alone to state a cause of action, and that life would be intolerable if one must be on c guard to do nothing which might be expected to offend the sensibilities of another. Conceding that charges made against anothe reference to his trade, office, or profession, calculated to injure him therein, would be libelous and actionable per se, and that defamatory language may become actionable by in fact injuring one's business reputation though not intended to do so, under t statute in question, the court pointed out that plaintiff failed to allege that the words did in fact injure her professional reputatio that they were spoken in reference to it.

See McGowen v Prentice (La App) 341 So 2d 55, § 8.

A charge made by defendant that plaintiff was "insane" and could be likened to two madmen well known in the community was I to be actionable without an averment of special damage, in Joannes v Burt (1863) 88 Mass (6 Allen) 236.

A complaint charging defendant university professor with having referred to plaintiff graduate student as "a psychopath," "very destructive," "antisocial," "intellectually incompetent," "a homosexual," and other epithets, was dismissed as not having pleaded slander per se, or having properly alleged special damages, in Stein v Trager (1962) 36 Misc 2d 227, 232 NYS2d 362. The court that it is fundamental in a complaint based upon slander that there must be an allegation of special damage, or the words spoke

be slanderous per se. To be held slanderous per se, the words must charge a person with a punishable crime, or they must ten injure a person in his trade, occupation, or profession. In the instant complaint, said the court, there was no allegation that the was pursuing a trade, business, or profession at the time of the alleged slander, and no allegation that the words damaged pla his trade, business, or profession.
See Towne v Cope, 32 NC App 660, 233 SE2d 624, § 8.
To say of plaintiff lawyer that "he is crazy, has a soft spot in his head, not in his right mind, etc.," was held not to be actionable because not spoken of him in his profession, in Goldrick v Levy (1881) 8 Ohio Dec Reprint 146, 6 WL Bull 20. The court stated words that are not actionable per se, when spoken of one generally, do not become so when spoken of one who has an office, profession, unless they are brought home to him in his vocation and pertain and apply to it.
See Fram v Yellow Cab Co. (DC Pa) 380 F Supp 1314 (applying Pa law), § 8.
In action by employee who alleged he was defamed when female co-worker told another worker that employee was "crazy," co not err in granting summary judgment against employee where statement was not meant in literal sense and was no more tha vigorous epithet in response to employee's accusations about female co-worker's affair with supervisor and her promotions, an statement therefore was not defamatory. Kryeski v Schott Glass Technologies, Inc. (1993, Pa Super) 626 A2d 595.
In one instance recovery has been denied for alleged slander based upon an oral imputation of insanity, in the absence of a ple that there was any publication of the alleged slanderous statement.
Thus, in Garrett v Lockheed Aircraft Corp. (1958) 98 Ga App 443, 106 SE2d 333, an action against the plaintiff's former corpor employer, its resident physician, and the plaintiff's former foreman and supervisor, for alleged slanderous statements, includin statement by the foreman that "that boy's crazy," it was held that the complaint failed to state a cause of action where it was r to appear that there was any publication of the alleged slanderous statements, there being with reference to the quoted statem allegation that anyone other than the supervisor heard it.

### B. As to mental deficiency not amounting to insanity

§ 7. Written or printed imputations

[a] Actionability established

In application of the general rule as to written or printed publications imputing impairment of mental faculties or intellectual we not amounting to insanity, [FN4] it has been held in a number of cases that such a publication about a private person was libel se and actionable without special damages, primarily because it exposed such person to ridicule, public hatred, contempt, or th deprived him of the benefits of public confidence and social intercourse.

[FN4]. § 3, supra.
And see Battell v Wallace (1887, CC NY) 30 F 229, where the libel sued upon was that the defendant called the plaintiff a "wret idiot" who had set about to injure him by trying to cast doubt upon some of the early pedigrees of the defendant's horses, and upon denying a motion to strike certain matter from the answer, that the matters in question concerned the truthfulness of the libelous matter, which was properly pleaded either in justification or in mitigation of damages.
See also Republican Pub. Co. v Mosman (1890) 15 Colo 399, 24 P 1051, wherein it was held libelous per se, as a violation of th criminal statute's definition of malicious defamation, as meaning tending to blacken the reputation of one who is alive, and ther expose him to public hatred, contempt, or ridicule, to print in defendant's newspaper an article about the plaintiff describing his as "inhuman, if true," and charging plaintiff with mistreatment of his wife in failing to properly heat his home, and in taking her away from her; Dunn v Hall (1849) 1 Ind 344, wherein the court affirmed a judgment for plaintiff against defendant newspaper based on a letter printed in the newspaper which contained a charge that plaintiff was a "fool" along with many other charges o heinous crimes; Meyerle v Pioneer Pub. Co. (1920) 45 ND 568, 178 NW 792, wherein, it was held, that a complaint alleging tha defendant newspaper published on its front page that plaintiff had invited his family to one last feast, had bought shrouds for al gun in order to end his life and his family's lives 24 hours before the world was going to end, stated a cause of action for libel a injuring plaintiff's good name and reputation at least for nominal damages.
Thus, in Stewart v Swift Specific Co. (1886) 76 Ga 280, it was held to be libelous as exposing the plaintiff to public hatred, cont ridicule, in accordance with the definition expressed in local statutes, to print in a newspaper for the purpose of advertising, tha plaintiff had made statements to a reporter that her mother, while under the influence of a cat-bite, had purred and mewed like had assumed the attitude of a cat in an effort to catch rats, and of similar cat-like acts on the part of the mother. The court stat a feeling of contempt for one so eager to spread before the world such ridiculous conduct of her own mother arose spontaneous human breast, and led to the belief that she could not be a very grateful and dutiful daughter, or tended to the conjecture that must have drawn the narrative from her, either because of extreme poverty or avaricious hunger.
Where defendant newspaper publisher issued memorandum stating plaintiff's services in sports department had been terminate that date because of alcoholism, inefficiency, lack of punctuality, and unreliability and placed memorandum on bulletin board fro which it was removed and copies furnished to all departmental employees and part-time employees, defendant would be require show that issuance of memorandum was in good faith and without malice and was issued in proper manner, to proper parties, a language limited to duty which defendant sought to uphold. Welch v Chicago Tribune Co. (Ill App) 340 NE2d 539.
In Brauer v Globe Newspaper Co. (1966) 351 Mass 53, 217 NE2d 736, the court reversed an order sustaining a demurrer to a c alleging that the defendant's publication in a newspaper of a photograph of the plaintiff captioned "help for the mentally retarde apparently used to illustrate an article on proposed health and welfare legislation, which photograph was recognized as the plair friends, relatives, and former neighbors, was defamatory.
Attention is also called to Hines v Shumaker (1910) 97 Miss 669, 52 So 705, wherein it was conceded that a letter from the defe insurance company, signed by the defendant superintendent of agents, to all of its agents, charging the plaintiff agent for anoth insurance company with not being "brainy," inter alia, and with being a "knocker," was libelous per se, and wherein the principa decided against the defendants, was whether the letter was privileged.
In Dawkins v Billingsley (1918) 69 Okla 259, 172 P 69, 12 ALR 144, upon reversing a judgment sustaining a demurrer to the pla evidence, the court held that an entry by the defendant teacher in the register of daily attendance and grades that the plaintiff p was "ruined by tobacco and alcohol," if untrue, was a false and malicious unprivileged publication by writing, which tended to de the plaintiff of public confidence and to injure him.
In Thomas v Bowen (1896) 29 Or 258, 45 P 768, the court held that under the rule that any false and malicious writing publishe another is libelous per se when its tendency is to render him contemptible or ridiculous in public estimation, or to expose him to hatred or contempt, or to hinder virtuous men from association with him, it was libelous per se for the defendant newspaper pul

to publish in his report of a crime that the plaintiff had kleptomaniac tendencies, that she had been arrested, and that stolen p    rty
was found in her apartment.
Statement in letter to general manager of newspaper with which plaintiff had sought employment that plaintiff had "some men
problems," whether construed as factual statement or one of opinion, was capable of bearing defamatory meaning. Hoover v F    ess
Publications, Inc. (1978, ED Pa) 461 F Supp 1206 (applying Pa law).
A publication containing charges that although plaintiff was "without brains or capital or credit," he had appeared at the head (
gigantic business enterprise requiring liberal bank balances and a large mental endowment, was held libelous per se as impugr     his
social character and his business capacity, in Wood v Boyle (1896) 177 Pa 620, 35 A 853.
Characterization of plaintiff in newspaper article as "paranoid sonofabitch" was libelous and actionable without pleading of spec
damages where it injured his reputation and cast doubt on his mental competence to discharge his duties as officer of national
charitable organization. Capps v Watts (1978, SC) 246 SE2d 606.
In Hibdon v Moyer (1917, Tex Civ App) 197 SW 1117, it was held that a publication by the defendant newspaper publisher of a    ticle
implying that the plaintiff owner and editor of a rival newspaper was subject to "brainstorms," was libelous per se as being the
publication of a natural defect and as exposing the plaintiff to ridicule, such accusation clearly implying an uneven mental bala    The
court added that even if such publication was not libelous per se, it would still be actionable as tending, by innuendo, to injure
plaintiff's reputation and expose him to public hatred, contempt, or ridicule, which is all that is required under the statutes and    isions
modifying the common-law rules of libel.
Calling the plaintiff physician "just a little daft" in a letter from the defendant physician to a third physician, all of whom were
stockholders and trustees in the same business enterprise, was held in Chambers v Leiser (1906) 43 Wash 285, 86 P 627 to be    lous
per se, under a statute which defined libel as the defamation of a person made public by any words, printing, writing, sign, pict
representation, or effigy tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive h    f the
benefits of public confidence and social intercourse.
An open letter by the defendant attorney referring to the plaintiff newspaper editor as being, inter alia, "incapable of thinking,"    ipid,"
"narrow of intellect," "a stupid blockhead," and "a base dunce," and stating that his "idiocy and assumed grandeur and vanity t    her
go to make a fool and eccentric fop of him," was held in Candrian v Miller (1898) 98 Wis 164, 73 NW 1004, to be libelous per s
"several phases."
In several cases a written or printed publication imputing to a private person a mental deficiency not amounting to insanity has    n
held libelous per se and actionable without special damages, primarily because it concerned such person in his business, emplc    nt,
occupation, or profession.
Thus, an anonymous postcard addressed to the plaintiff's employer stating that the plaintiff had a "decided complex" was held
Cavanagh v Elliott (1933) 270 Ill App 21, to be libelous and actionable per se without any showing of special damages or innue
since it was written in regard to the plaintiff's business or employment. The court conceded that charging a person with having
"decided complex" alone would not be libelous, but that the noun "complex" as here used undoubtedly meant a certain mental    ,
trend, or condition which influences or controls the acts of a person. And, said the court, used in conjunction with the other wo    n
the postcard, such charge could have but one meaning, namely, that the plaintiff, as manager of one of the offices of his comp    did
not perform his duties in a manner for the best interest of his company. It was stated that where words spoken or written may    in
and of themselves be actionable, yet if spoken or written of another person in regard to his business or employment, they may    ome
libelous per se. Continuing, the court said that if words are written of another which are capable and reasonably susceptible of
defamatory meaning as respects him in connection with his business, they are actionable per se and need no allegations of inn    o.
The court stressed the fact that it is not necessary that the words should contain an imputation upon plaintiff as an individual w
would be actionable apart from the question of his business or profession. The ground of the action, said the court, in such case
that the party is disgraced or injured in his profession or trade or exposed to the hazard of losing his office, employment, or bu:    is in
consequence of the defamatory words, and not that his general reputation in the community is affected by them.
A letter from the defendant railroad company to one of its customers, who had a claim for loss on a shipment which was being    lled
through the plaintiff, stating that the plaintiff had a "cracked idea" that when he put in a claim it must be paid or sue, and also    the
plaintiff was a "dangerous man" to the customers' interests, was held to be libel per se in Dobbin v Chicago, R. I. & P. R. Co. (1
157 Mo App 689, 138 SW 682. Although reversing judgment for the plaintiff on other grounds, the court stated that the whole l
denounced the plaintiff as a dangerous man in his calling and was intended and did injure him in his general business, this bein
beyond the scope of the privileges of legitimate business correspondence, and constituting a libel of the plaintiff's business. The    : in
such situations was stated to be that any publication which imputes to a merchant or other businessman conduct which is injuri    to
his character and standing as a merchant or businessman is a libel per se.
Stewart v Ging (1958) 64 NM 270, 327 P2d 333, was a libel action based upon alleged defamatory statements about the plainti
minister contained in a report by the Commission on Investigation of the Methodist Church published in the official publication c    :
church in the area involved and signed by the defendant. The plaintiff had made serious charges against a church superior as a    It of
which he was investigated by the commission. The report stated that the plaintiff "has either wilfully tried to deceive, or is suffe
from a greatly confused mind," among other charges. Reversing a judgment dismissing the complaint, the court held that the re    :
was libelous per se and that it was unnecessary to allege special damages.
And a newspaper article which charged the plaintiff physician with being "furious with madness" and "a blockhead or fool" was h    :o
be libelous per se and actionable without proof of any damages in Krug v Pitass (1900) 162 NY 154, 56 NE 526. Although revers
judgment for the plaintiff on other grounds, the court stated that calling a physician, as such, a blockhead or fool, necessarily re    ed
upon his ability to practice medicine and charged the plaintiff with a want of professional ability and integrity, thus endangering    gain
derived from his vocation.
Newspaper articles censuring a number of resident physicians of a hospital, including the plaintiff, and referring to the plaintiff a
jackass in the guise of a young doctor," a "brute" to care for the sick, a "ghoul" to mutilate the dead, and a "degenerate gradua
deserving of arrest," were held in Bornmann v Star Co. (1903) 174 NY 212, 66 NE 723, to be libelous per se.
See also Carpenter v Hammond (1886, Sup) 1 NYSR 551, wherein it was held that a good cause of action for libel was stated by
complaint alleging that the defendant had issued a printed circular respecting the business relation between the parties, and sta
among other things, that the plaintiff had a "shallow head and unprincipled heart."
A letter which a friend of the plaintiff requested of the plaintiff's employer after the plaintiff had been discharged, stating that or    the
reasons for the plaintiff's discharge was that "the man's mind is affected," was held to be libelous per se in Taylor v McDaniels (    )
139 Okla 262, 281 P 967, 66 ALR 1246, although a judgment for the plaintiff was reversed on the ground that there had been n    jal
publication, since the letters were sent at the request of the plaintiff himself by his agent.

[b] Actionability not established ✗

Where a publication imputing a mental deficiency not amounting to insanity has been found not to convey a defamatory meanin    the
general public, it has been held that no action for libel would lie without pleading and proof of special damages.

Doctor's letter that plaintiff badly needed psychiatric examination, attached to petition to have plaintiff declared incompetent, being privileged, was not libelous. Bencomo v Morgan (Fla App) 210 So 2d 236.

Thus, in Gogerty v Covins (1955) 5 Ill App 2d 74, 124 NE2d 602, wherein, in an action for libel based on the defendant's charge that plaintiff, a political candidate, with embezzling money from the city, the defendant cross-complained that the plaintiff in a radio broadcast charged the defendant with using every device of his "immature and impoverished mind" to help his father-in-law get nominated and elected, the court, treating the cross-complaint as one for libel, dismissed it as not being actionable per se without special damages.

And in Cowan v Time, Inc. (1963) 41 Misc 2d 198, 245 NYS2d 723, the defendant magazine published an article entitled "Some Shots Afloat," composed of about eight pictures of persons using boats, printed commentary concerning each of the pictures, and a brief statement concerning the lack of care by many persons now using boats. The plaintiff claimed that he was the individual at the tiller of one of the small boats pictured in the article, and alleged only general damage. The court, in dismissing the complaint, held that the article was not libelous per se, and that without an allegation of special damage, the complaint must be dismissed. The court said while the plaintiff alleged that the publication had held him up to scorn, infamy, hatred, degradation, aversion, ridicule, contempt and indignity, it was for the court to decide whether a publication is capable of the meaning ascribed to it and that an examination of the entire article satisfied the court that at most the plaintiff, together with some of the others whose pictures are shown, were charged with acts of carelessness only. To charge even a professional man with ignorance or mistake on a single occasion only, and not accusing him of general ignorance or lack of skill, cannot be considered defamatory on its face, concluded the court, subject to the limitation that words, although directed to a single case, may, in themselves, imply general unskilfulness or general ignorance in the calling. The court added that the matter involved a subject of public interest and that it was fair comment.

Statements in letter to defendant's daughter that defendant wanted to swallow bottle of sleeping pills and went berserk were not libelous. Brill v Brenner, 62 Misc 2d 102, 308 NYS2d 218.

Statement in letter written by insurer that insured's wife was "mentally retarded," and that this was ground for terminating insurance coverage, was not actionable, because statute provided qualified privilege for insurer in specifying reasons for cancellation upon written request of insured, and because wife failed to prove express malice or malice in fact on part of insurer toward her. Prentiss v Nationwide Mut. Ins. Co., 256 SC 141, 181 SE2d 325.

In action by publisher of airline magazine who alleged he was defamed when his supervisor informed magazine staff that publisher would be on leave pending results of investigation of magazine's organization conducted by industrial psychologist/management consultant, court did not err in granting airline's motion for summary judgment where supervisor's announcement to staff in no way could be construed as allegation that publisher was mentally disturbed. Crum v American Airlines, Inc. (1991, CA5 Tex) 946 F2d 57, BNA FEP Cas 392, 7 BNA IER Cas 415, 57 CCH EPD ¶ 41075, 121 CCH LC ¶ 56794, 21 FR Serv 3d 262, reh den (CA5) 1991 (applying Tex law).

§ 8. Oral imputations

In application of the general rule as to oral imputations of mental deficiencies not amounting to insanity, [FN5] it has been held in several instances that such an imputation as to a private person was not slanderous per se and was not actionable without plea or proof of special damages, where it was not spoken in reference to such person's business, employment, occupation, office, or profession.

[FN5]. § 4, supra.

In action by employee who claimed she was defamed when her employer allegedly circulated fact that she was mentally ill as reason for her dismissal, court would dismiss claim where woman had never hidden fact that she suffered from mental illness and had volunteered information at time she first interviewed for job, and where truth was absolute defense. Kuhn v Philip Morris U.S.A., Inc. (1993 Pa) 814 F Supp 450.

Former employee failed to state claim for defamation under Kansas law, arising from statements allegedly made by other employees that he voluntarily resigned position because of mental problems; there was no showing of damage to employee's reputation. Nunn v. Yellow Freight System, Inc., 993 F. Supp. 822 (D. Kan. 1998).

Supervisor did not slander plaintiff employee under Alabama law by stating to co-employee that plaintiff was "mentally disturbed"; plaintiff's allegations that such remark caused actual harm to her reputation, caused her to be discredited in her work, and caused her to be denied promised raise in wages and opportunity for overtime were conclusory, and co-employee to whom statement was made had no influence over plaintiff's salary review or overtime opportunities. Mills v. Wex-Tex Industries, Inc., 991 F. Supp. 1370 (M.D. Ala. 1997).

Alleged utterance of "Do me a favor, see a psychiatrist," clearly did not pertain to plaintiff in any business capacity, and therefore was not slander per se, and plaintiff was obliged to plead and prove special damages. Modla v Parker, 17 Ariz App 54, 495 P2d 494, cert den 409 US 1038, 34 L Ed 2d 487, 93 S Ct 516.

Doctor's testimony in competency proceeding that plaintiff badly needed psychiatric examination, being privileged, was not slanderous. Bencomo v Morgan (Fla App) 210 So 2d 236.

In defamation action by bookkeeper-cashier against employer, based on employer's statements to cashier's manager that cashier had attempted suicide and had mental problems in her past, trial court properly submitted issue of defamation to jury, where there was sufficient and competent evidence to make prima facie case of defamation for jury. Higgins v Gordon Jewelry Corp. (1988, Iowa) 433 NW2d 306.

Defendant dentist's allegedly profane words and statement to plaintiff patient in dentist's office that plaintiff was in need of a psychiatrist were insufficient to constitute defamation, nor did they constitute intentional infliction of emotional distress. Ferlito v Cecola (1982, La App) 419 So 2d 102, cert den (La) 422 So 2d 157.

Statement by school principal in teacher lounge of high school that teacher was "nuts" was not actionable, where statement was casual remark in informal conversation. McGowen v Prentice (La App) 341 So 55.

Employee's action for defamation against employer could not be premised on employer's offer, conveyed to employee in his home, to reinstate employee to his job conditioned upon his undergoing psychiatric evaluation to enable company management to identify and handle his "behavioral difficulties"; offer arose from legitimate concern for employee's well-being and employment-related interactions, and was communicated only to members of shop committee and an employee of state civil rights commission, both within recognized limits of qualified immunity. Morvay v Maghielse Tool & Die Co. (1983, CA6 Mich) 708 F2d 229, 31 BNA FEP Cas 1471, 113 BNA LRRM 2704, 32 CCH EPD ¶ 33644, 97 CCH LC ¶ 10152, cert den (US) 78 L Ed 2d 715, 104 S Ct 534, 33 BNA FEP Cas 552, 114 BNA LRRM 3512, 99 CCH LC ¶ 10610 (applying Mich law).

And even though the plaintiff was a registered nurse, words spoken about her by defendant doctor, that her trouble was "mental" due to an oversexed condition," were held not to be spoken of her in her profession, nor an imputation of unchastity, and so not actionable without special damages, in Hyatt v Salisbury (1955) 207 Misc 785, 143 NYS 2d 162. Unless within one of the four categories of slander per se, (1) a charge that plaintiff has committed a punishable crime; (2) a charge that plaintiff has a loathsome disease; (3) a c

that deals with the office, business, trade, or profession of the plaintiff and tends to injure him therein; or, (4) a charge imputi
unchastity to plaintiff, said the court, oral charges attacking the character or condition of health of a person, or accusing a pers    if
disreputable conduct, are not actionable without a pleading and proof of special damages.
Thus, an oral statement made by an employee of the defendant corporation in the defendant's place of business, a public danc
ballroom, that the plaintiff stockbroker was a "silly stupid senile bum, a trouble maker, and should be confined to an asylum,"    held
not to be slanderous per se and not actionable without an allegation of special damages, in Gunsberg v Roseland Corp. (1962)    Misc
2d 220, 225 NYS2d 1020. The court said that such words imputed to the plaintiff some misconduct unconnected with his office
profession, or trade, and that there must be some reference, direct or indirect, in the words or in the circumstances attending
utterance, which connects the slander with such office or profession or trade.
Oral statements to defendant's daughter that her mother attempted to commit suicide and was berserk were not slanderous. B
Brenner, 62 Misc 2d 102, 308 NYS2d 218.
Statement to sheriff made by agent of state bureau of investigation that prisoner was "nutty as a fruitcake" was not actionable
defamation, where statement was privileged as being statement by one law enforcement official who had just arrested prisoner
another who was charged with safekeeping of prisoner in jail. Towne v Cope, 32 NC App 660, 233 SE2d 624.
Statement on TV news show by taxicab company representative that statements by rival cab company's president on prior new    ow
sounded "a little bit like the sort of paranoid thinking that you get from a schizophrenic," was not defamatory. Fram v Yellow C    o.
(DC Pa) 380 F Supp 1314 (applying Pa law).

Research References

Total Client-Service Library References

The following references may be of related or collateral interest to a user of this annotation.

Annotations

Encyclopedias and Texts

50 Am Jurisprudence 2d, Libel and Slander §§ 91, 108.
Am Jur §§ 51, 66.

Practice Aids

13 Am Jur Pl & Pr Forms, Forms 13:51, 13:52, 13:71 et seq..
Liability for abusive language, 16 Am Jur Proof of Facts 2d 493.
Confinement to Mental Institution, 28 Am Jur Proof of Facts 547.

Digests and Indexes

ALR Digest Libel and Slander §§ 19, 55.
Quick Index Libel and Slander.
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. (    Works.