UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NUMBER: 04-CV-12316-WGY

KEVIN P. LOUGHMAN,
A Citizen of the Commonwealth of Massachusetts,
Plaintiff

vs.

MAURA MAHONEY,
A Citizen of the State of Florida

and

LOTUS DEVELOPMENT CORPORATION,
Based in Cambridge, Massachusetts,

and

INTERNATIONAL BUSINESS MACHINES CORPORATION, (IBM),
Based and Incorporated in the State of New York,

Defendants

PLAINTIFF'S MOTION FOR RECONSIDERATION OF SO-CALLED
"ORDER OF DISMISSAL," DATED OCTOBER 27, 2005.

By and For the Plaintiff, Pro-Se

Kevin P. Loughman

4 Marrigan Street, Arlington, Massachusetts, 02474

Telephone: 781-641-2756

I, Kevin P. Loughman, Plaintiff Pro-Se in the above-captioned Federal Civil Complaint, do hereby Motion this Honorable Court that it should timely reconsider its previously-issued "ORDER OF DISMISSAL," dated October 27, 2005. A copy of this Court Order was received on October 28, 2005.

This Motion for Reconsideration is made pursuant to FRCP Rule 59(e) and should be construed as a motion to alter or amend judgment under FRCP Rule 59(e). This Motion for Reconsideration is both timely filed and timely served, within ten days of the date of the original order or action.

In accordance with FRCP Rules, the Plaintiff, Pro-Se, hereby certifies to the Court that he has conferred with Opposing Counsel David. B. Wilson, regarding his intention to file, and reasons for filing, this instant Motion.

As reasons for his Motion, the Plaintiff states and avers to the Court as follows:

1.  The Plaintiff believes that this instant case should be allowed to move forward to the discovery and disclosure phase. The Plaintiff believes that this case should be allowed to move forward to eventual hearing before a jury, as it involves factual issues. The plaintiff believes that, given the opportunity, he is very well able to demonstrate a so-called "justiciable cause," upon which relief can lawfully be granted. The Plaintiff rejects the absolute and very far-fetched notion that he is unable to show **any cause**, upon which relief can be lawfully granted. He rejects the notion that the Defendant's utterance was

perceived **only** as "rhetorical hyperbole", and offer's proof that the slanderous and defamatory utterance of Defendant Maura Mahoney, was, de facto, perceived in its **literal sense by certain and multiple identified recipients**, and based upon this **documented perception by multiple, identified recipients**, it is factual error for the judge to conclude or find that the false, slanderous utterance in question was and is **inherently incapable** of being construed in its **literal sense**. Furthermore, since this is a complex **factual question**, it is one for determination by a jury, and not, **a priori**, and preemptively, by a judge. In conclusion, on this point of law, the Plaintiff, Pro-Se, holds, that since the alleged slanderous and defamatory utterance was, de facto, perceived by certain identified recipients, in its "literal"(as opposed to its "rhetorical") sense, the protection ordinarily afforded to "rhetorical hyperbole" must logically, necessarily, and also legally fail.

2.   The Plaintiff states that he was fully prepared, at the so-called "Hearing" on October 26, 2005, held at Boston College Law School, to argue, demonstrate, and prove that, contrary to the judge's tentative conclusions and ostensible "leanings", the verbal, defamatory, false, and slanderous utterance of the Defendant Maura Mahoney, pertaining to Plaintiff's emotional, mental and/or mental-health status, was de facto, **perceived in a literal sense**, by certain identified persons who received them; and also that the subsequent, observed, documented, and recorded conduct, language

3

and behavior of these identified persons towards the Plaintiff, (including their body language, gestures, facial expressions, and symbolic language) is a valid, sound refutation of the notion that the slanderous utterance of the Defendant is is inherently incapable of being perceived in a literal or non-rhetorical sense; and that these identified persons did in fact perceive and believe the Plaintiff to be a person of unsound emotional status, mental condition, and/or **cognitive capacity.** In other words, these two identified recipients of the slanderous utterance of Defendant Maura Mahoney subsequently demonstrated conduct or communications behavior towards the Plaintiff consistent with the cognition that the Plaintiff was "a lunatic" as stated by Defendant Maura Mahoney in her telephone conversation with Maura Feeley on July 10, 1998. Maura Feeley is a Defendant in a related Libel-Defamation Complaint, within Middlesex County (Massachusetts) Superior Court. While two recipients have been identified by their communications conduct towards the Plaintiff, there are additional recipients of this slanderous communication, who also need to be examined by the Plaintiff, Pro-Se, with a view to determining their perceptions, regarding the Plaintiff's mental health status, following their receipt of the Defendant's slanderous and defamatory statement, regarding the Plaintiff's mental-health status. The slanderous utterance issued in July, 1998.

3.     The Plaintiff was denied the requisite time and opportunity to make that presentation, and his oral arguments were prematurely truncated and/or pre-empted by inadequate time allocations. The estimated time allocation for

Hearing of this case was solely articulated by Opposing Counselor David B. Wilson, ostensibly based upon his separate and distinct needs for Court Time to make his position known. The Plaintiff, Pro-Se, was not recognized by the Court, for the purpose of articulating his personal time requirements for his own, separate and distinct Oral Arguments. Had he been allowed to do so, the Plaintiff would have requested the maximum time allowed by Court Rules, and, ideally, thirty minutes, as a minimum for a thresh-hold elaboration of the issues in his case.

4.  Imputations of "lunacy" or "the state of being a lunatic" are deemed to be imputations of a **loathsome disease (mental illness)** and as such, they violate that body of common law known as The Second Restatement of Torts. In addition, such imputations of "lunacy" further violate this body of common law, based upon defamatory attacks upon **job-related competence**. Soundness of mind, including emotional stability and high levels of cognitive and reactive skills are deemed by the Plaintiff and by society to be **bonafide** job requirements for the Plaintiff's former occupation as a security guard.

5.  The Plaintiff holds that, because this slanderous utterance was, **de facto, perceived in a literal sense by certain identified recipients**, it cannot be said or held to be inherently "rhetorical" and hence, it cannot be held to be "incapable" of being perceived or construed in a "literal" sense, by so-called "reasonable" persons. If the utterance was construed (and even if it was mis-

construed), and was understood in a "literal" sense by so-called "reasonable" people", then its legal protection as "rhetorical hyperbole" must also logically, necessarily, and legally fail.

6.  The two identified recipients of the defamatory utterance of Maura Mahoney are: Theresa Drisko and Errin Arroyo, both past employees of First Security Services Corporation.  The details of their facial expressions, body language, gestures of ridicule, and symbolic language during multiple legal proceedings before the Massachusetts Department of Industrial Accidents are documented in DIA case documents, which the Plaintiff proposes to make available, with the assistance of Court-Issued Subpoenas.

7.  The Plaintiff holds that the Judge made an error of both fact and law when he wrongfully concluded, as a so-called "basis for dismissal", that the false, verbal, defamatory, slanderous and factually erroneous utterance of Defendant Maura Mahoney, was essentially "rhetorical" in its nature and its meaning, and/or that this utterance was **inherently incapable** of being construed (or even misunderstood) in the context of its literal or non-rhetorical meaning.  The fact that the so-called "rhetorical" meaning of the utterance was misconstrued by Theresa Drisko and by Erin Arroyo disproves the farfetched and illogical notion that utterances relating to sanity or insanity are inherently incapable of ever being wrongfully construed or misconstrued. Furthermore, questions of fact are within the province of a jury to determine.

The question of the **perception** of Maura Mahoney's utterances is a question of fact for a jury to determine. If it can be shown (and it can) that multiple identified persons, who received Maura Mahoney's utterance regarding the Plaintiff's "unsound mental status," believed this status to be true in a "iteral sense," then the defense of "rhetorical hyperbole" collapses entirely.

8.  We also know that the case-law in Massachusetts does not always recognize and universally protect so-called "rhetorical hyperbole". Reference is here made to the Massachusetts SJC Decision in the case of *Commonwealth v. Canter*, 168 N.E., 790, (1929). In this appeal case, Harry J. Canter was denied all relief from his conviction on **criminal libel charges**, against the Governor of Massachusetts, Alvin T. Fuller. Mr. Carter had carried a placard, which "libeled" and "defamed" Governor Fuller as a "murderer" in connection with his refusal to intervene or otherwise delay the premature and unjust executions of Nicola Sacco and Bartolomeo Vanzetti in August of 1927. The following two extracts from the decision are particularly illuminating on the issue of "rhetorical hyperbole":

> The words---"Fuller---murderer of Sacco Vanzetti," taken in their usual, natural and popular sense, and without forced construction, import a charge of the most heinous crime known to the law---willful murder---and are libelous per se. Giving to the words their primary meaning, the publication of them was well-calculated to injure the reputation of Governor Fuller, to degrade him in society, to lower him in the confidence of the community, and to bring him into public hatred and contempt...

> ...it is not sufficient for a defendant to show by argument that words

> in form libelous were not intended to be such in fact, where the words published are not ambiguous and have a meaning that is perfectly clear and well understood by everybody. There was no error in the refusal to direct a verdict for the defendant, in the refusal to receive the testimony offered to prove that the words were used to mean only that Governor Fuller was responsible for the deaths of Sacco and Vanzetti, in the refusal to receive the testimony offered to prove the truth of the publication assumed to have been ascribed to the words by the defendant……

The Plaintiff holds that the use of the word "murderer" by Harry J. Canter is exactly analogous to the use of the word "lunatic" by Ms. Maura Mahoney. In Massachusetts all persons are presumed innocent, unless/until convicted. Governor Alvin T. Fuller was never convicted of the "murder" of Nicola Sacco and/or Bartolomeo Vanzetti. In Massachusetts, all persons also enjoy the presumption of sanity, except for those very few persons who have been adjudged to be "insane" by a Court of Law, on the basis of credible expert medical opinion. After adjudication, those who have been adjudged "insane" no longer enjoy the presumption of sanity, and are legally "insane" **in fact**.

9.   In order to prevail in his case, it would have been necessary for Defendant Harry J. Canter to prove that, without exception, not even one single, solitary viewer of the defamatory placard perceived it in a "literal" sense. And even, on this point, the Mass. SJC seems to be instructing us, if the meaning of the expression is **unambiguous** and **clear, without forced construction**, it is not sufficient to prove that an expression is merely capable of being perceived literally by reasonable persons. You must also prove that all persons perceived it as hyperbole, and that no persons perceived it in its

literal sense. If an expression is perceived by some people as hyperbole and by others in its literal sense, then the expression it cannot be held to be "rhetorical hyperbole". If an expression is in any way capable of being perceived in a "literal sense", then the protection afforded by the legal doctrine of "rhetorical hyperbole" cannot lawfully be extended to that expression. What all of this boils down to is the question of exactly what constitutes "rhetorical hyperbole". Does the "essence" of the questionable utterance consist exclusively of the perception and intention of the sender, or the does the perception of the receiver also come into play? ***Commonwealth v. Canter*** seems to tell us that it is the perception of the receiver which counts and which governs. The perceptions of all of the individual receivers of Maura Mahoney's slanderous utterances are, indisputably, questions of fact, and are, as such, questions for a jury to determine. These questions are not matters of law for interpretation by a judge. Hence, the judge makes a prejudicial error of law in precluding this case from coming before a jury for determination of the facts, related to the defense issue of alleged and also protected "rhetorical hyperbole".

10.     The Plaintiff holds that the Judge's assessment is based on a flawed and highly superficial misunderstanding of communications theory. There are four essential elements that need to be examined before one can logically, intellectually, and credibly support the conclusion that an utterance, per se, is exclusively "rhetorical" in its nature and meaning; and that it is inherently in-

9

capable of being misconstrued by so-called "reasonable" persons: first, the original sender's intent; second, the literal or actual framing of the message itself (i.e., the actual words used, along with the semantic-linguistic context of those words, without strained construction ); third, the medium and conditions of transmission of message, (including distortion, noise, legibility, and other sources of interpretive error) and; fourth, the real, actual perceptions of the receiver of the message, since messages may be, and very often are, mis-construed by so-called "reasonable persons" in ways which are radically different from, or inconsistent with, the intent or perceptions of the sender of the communication.  Again, as The Massachusetts SJC instructs us in the case of *Commonwealth v. Canter,* if a message is even **merely capable** of "literal" perception, it cannot be afforded the protection of "rhetorical hyperbole".
In the instant complaint of this Plaintiff, not only is the offending utterance **capable** of being perceived literally (which satisfies the standard established by the Mass. SJC in *Commonwealth v. Canter*), but it also has actually, **de facto, been so perceived by two identified recipients of the offending ut-terance,** who upon coming into personal and face-to-face contact with the Plaintiff, in the course of litigation before The Massachusetts Department of Industrial Accidents, exhibited conduct and behavior, including symbolic language, consistent with the perception that the Plaintiff was not of sound and/or competent mental status.  In one of these instances, the conduct and behavior of Theresa Drisko, then an employee of the First Security Services Corporation disrupted the Hearing before the DIA and had to be addressed by

the Presiding Judge, William Constantino, Jr. This offensive, humiliating, and degrading incident, including descriptive references to the specific nature of the disrupting behavior and language, was transcribed, as part of the Record of Hearing, and the Plaintiff proposed to enter appropriate extracts from this DIA Hearing, in support of his contention that identified recipients of the offending utterance of Maura Mahoney, did, in fact, perceive the Plaintiff to be suffering from mental debilitation, mental illness, neurological or cognitive deficits. Prior to his appearance at Hearing, the Plaintiff had described these documents to Clerk Bonnie Smith, who advisedthe Plaintiff that the presentation of these documents at this stage of the Hearing would be premature and unnecessarily burdensome to Chief Judge Young, and that, accordingly, the introduction of documents of this type would be better left to a later phase in the adjudication process.

## CONCLUSION

For all of the reasons heretofore stated, the Plaintiff, Pro-Se, prays that this Honorable Court will reconsider its rather hasty, inadequate, and also highly confusing, truncated, and perfunctory Hearing and also the resulting Order. It is apparent from the quick summary decision, unsupported by any evidence of thoughtful legal examination or analysis, that a very busy Judge has simply decided to "polish off" a bothersome and admittedly inefficient Pro-Se case, by simply characterizing the offending utterance as "non-literal

speech," (read: "rhetorical hyperbole") without any supporting reference to, or any serious examination of its "literal perception" by multiple recipients, and without any reference to the adjudicatory standard established by the case of **Commonwealth v. Canter** for cases which invoke the particular, amorphous, confusing, inconsistent and questionable defense of "rhetorical hyperbole".

Chief Judge William G. Young certainly cannot be criticized and/or faulted for his unfailing courtesy, affability, good humor, and passion for justice. However, he could and should do better in accommodating Pro-Se litigants, who might be exceptionally nervous, based upon a first appearance in a Federal Court, as well as put off stride, by the highly unusual and also disorienting venue before an audience of a few hundred law students. Notwithstanding his nervousness, his high blood pressure, and pain from an ulcerated leg, the Plaintiff did the best he could, under the circumstances. He is delighted that some social good, at least in the form of legal education, might eventually emerge from this nightmarish experience of litigating his slander case in such an alienating, disorienting and unnerving atmosphere.

The Plaintiff wishes to be given a **meaningful** opportunity to present his Oral Arguments to the Court, now, more especially in view of the errors, and inconsistencies which have attached to this adjudication, based upon the defaulted and defective critical analysis of the so-called defense of "rhetorical hyperbole", so blithely articulated by Opposing Counsel, and so blithely and

uncritically endorsed by the Court. The Plaintiff very respectfully makes reference, for the enlightenment of the Court on the doctrine of "rhetorical hyperbole", to the very recent and ground-breaking analysis authored by Eric Scott Fulcher. Please see: ***Rhetorical Hyperbole and the Reasonable Person Standard: Drawing the Line Between Figurative Expression and Factual Defamation,*** Ga. L. Rev. 717, Winter, 2004. This Plaintiff, Pro-Se, would be more than content to submit his case to adjudication under the procedures and standards articulated in this highly prescient and very insightful legal analysis. Will he ever be given the opportunity to do so?

Respectfully submitted to this Honorable Court,

(Signed under the pains and penalties of perjury.)

*[signature]*

Kevin P. Loughman, Plaintiff, Pro-Se, November 4, 2005

Copies of this Motion are being sent as a matter of courtesy to:

Hon. Julian T. Houston, Middlesex County Superior Court
Attorney Jean Musiker, Opposing Counsel in Related Case.

### CERTIFICATE OF SERVICE

I, Kevin P. Loughman, Plaintiff in this instant case, hereby certify that on the above date, I served the above document by mailing a copy of same, postage pre-paid, to Attorney David Bliss Wilson, Senior Counsel for the Defendants, at the Law Firm of Robinson & Cole, L.L.P., One Boston Place, Boston, MA 02108-4404.

*[signature]*

Kevin P. Loughman, Plaintiff, Pro-Se, October 4, 2005